## UNITED STATES DISTRICT COURT FOR
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| Paul Anthony Hatton,<br><br>       Plaintiff,<br><br>vs.<br><br>JUSTICES OF THE OKLAHOMA SUPREME COURT AND JUDGES OF THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA,<br><br>       Defendants. | **FILED**<br>DEC 1 4 2018<br>CARMELITA REEDER SHINN, CLERK<br>U.S. DIST. COURT WESTERN DIST. OKLA.<br>BY_____,DEPUTY<br><br>Case №. CIV_____ |

**CIV 18 1219 C**

## COMPLAINT FOR PROSPECTIVE DECLARATORY
## AND PROSPECTIVE INJUNCTIVE RELIEF

Plaintiff Paul Anthony Hatton ("Plaintiff") or ("Hatton"), for his complaint pursuant 42 U.S.C. § 1983 against The Honorable Douglas L. Combs, Justice of the Oklahoma Supreme Court, The Honorable Patrick Wyrick, Justice of the Oklahoma Supreme Court, The Honorable Tom Colbert, Justice of the Oklahoma Supreme Court, The Honorable Justice Yvonne Kauger, Justice of the Oklahoma Supreme Court, The Honorable Justice John F. Reif, Justice of the Oklahoma Supreme Court, The Honorable James R. Winchester, Justice of the Oklahoma Supreme Court, The Honorable, James E. Edmonson Justice of the Oklahoma Supreme Court, The Honorable Noma D. Gurich, Justice of the Oklahoma Supreme Court, The Honorable Judge Robert Dick Bell, The Honorable Larry E. Joplin, Judge, and The Honorable Kenneth L. Buettner, Judge, The

Honorable Judge E. Bay Mitchell, The Honorable Judge Brian Jack Goree, The Honorable Judge Barbara G. Swindon ("Defendants" or "Justices of the Oklahoma Supreme Court and Judges of the Court of Civil Appeals of the State of Oklahoma") are being sued, only, in their official capacity. Defendants are and/or were at all times described below state actors for the purposes of 42 U.S.C. § 1983, who are or were acting under color of state law have caused the Plaintiffs to be subjected to an Oklahoma Rule 1.36 appellate preceding. That Rule 1.36 appellate proceeding was and is Defendants' deprivation, denial, prohibition or enforcement of the Plaintiff' valid civil rights secured by the Constitution, federal law, state law or the common law. Plaintiff therefore has they sustained injuries at the hands of the Defendants for which this Court can grant them relief[1], more specifically shown below. Therefore Plaintiff allege[2] and state as follows:

## INTRODUCTION

1(a). This is an action pursuant to 42 U.S.C. § 1983 for the Defendants' deprivation of this Plaintiff's civil rights under color of state law, for which he seeks equitable, declaratory, and prospective injunctive relief challenging under provisions of the U.S. CONST., Art. IV, Privileges and Immunities, Sec. 1, and Full Faith and Credit, Sec. 2; Art. VI, Sec. 2, Supremacy Clause; amend. I, denial right of access to state courts, and denial of

---

[1] Kentucky v. Graham, 473 U.S. 159, 166–67 (1985). To state a § 1983 claim, a plaintiff must show "the deprivation of [a federal] right by a person acting under color of state law." Wittner v. Banner Health, 720 F.3d 770, 773 (10th Cir. 2013).

[2] An official-capacity suit is, for all intents and purposes, to be treated as a suit against the entity, in this case, the state of Oklahoma. Hafer v. Melo, 502 U.S. 21, 25 (1991).

free speech rights, and amend XIV, § 1 both its equal protection clause and due process clauses of the State of Oklahoma's ongoing deprivation, prohibition and real and ongoing threat of their enforcement[3] against one class of appellants from their filing an appellate merits brief in the state summary appellate proceedings conducted under Rule 1.36(g), Rules of the Supreme Court of Oklahoma, 12 O.S., Ch. 15, App. 1 ("Okla.Sup.Ct.R."or "Rule 1.36"). Under the common law tradition the federal and state appellate court, near singularly, rely on the essential briefing function of the parties', respective, advocates to provide it with and frame the unique and relevant preserved facts and arguments of law essential for an appellate court's determining the merits of the issues in the appealed case.[4] Only, the State of Oklahoma has the unique Rule 1.36 summary appellate proceedings. Under the party presentation system elementary to all common law courts is the function of the parties' advocate who is to throughout the proceeding is to participate through the zealous advocacy for his client.  The Federal and State courts' commitment to the adversarial system of justice is the elemental, defining and distinctive feature of our legal system.[5] The party presentation principle is basic to our procedural system, Greenlaw v.

---

[3] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

[4] Douglas H. Ginsburg, Appellate Courts and Independent Experts, 60 CASE W. RES. L. REV. 303, 314 (2010) ("Unlike a judge in the inquisitorial system of the civil law used throughout Europe, a common law judge does not conduct his own investigation." (footnote omitted)).

[5] Amanda Frost, The Limits of Advocacy, 59 DUKE L.J. 447, 495 (2009) ("[T]he adversarial system itself is widely acknowledged to be a fundamental feature of the American adjudicatory process."); William B. Rubenstein, A Transactional Model of Adjudication, 89 GEO. L.J. 371, 371 (2001) ("The traditional premise of American civil adjudication is that ours is an adversary system . . . .").

United States, 554 U.S. 237, 243-244 (2008).   Ultimately, this question concerns the relative importance in our legal system of "getting it right," as opposed to just ending a dispute between two parties, and the role the [appellate justice or] judge should play in the process of reaching the ultimate intended goal.[6]  What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead he or she decides on the basis of facts and arguments pro and con adduced by the parties." McNeil v. Wisconsin, 501 U.S. 171, 181 n.2 (1991).

    1(b).   Plaintiff is a state appellant in pending and ongoing state appeal: Embrace Home Loans, Inc., Plaintiff/Appellee, vs Paul Anthony Hatton, Defendant/Appellant, and Shelia Jo Hatton; Unknown Successors of Edith M. Rennie, if any; John Doe, as Occupant of the Premises; and Jane Doe, as Occupant of the Premises, Defendants, Case No. SD-117581 ("Hatton appeal").  On December 7, 2018, the Defendants have sua sponte acted under color of state law to designate the Hatton appeal to be a Rule 1.36 summary appeal. Under Rule 1.36(g) proceedings the Plaintiff as appellants is prohibited, deprived and has a real and ongoing threat of enforcement[7] from his filing of an appellate merits brief to specifically identify or to set forth and to argue certain and specific legal or factual errors

---

    [6] Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts, 69 Tenn. L. Rev. 245 (2002).

    [7] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

or omissions that occurred in the trial court proceedings or in the entry of its orders.

Plaintiff is deprived, prohibited and has a real and ongoing threat of enforcement[8] by the

Defendants' under Rule 1.36 from his presenting his unique facts and arguments to the

state appellate courts to seek correction of trial court errors or omissions through

submitting his highly forensic arguments in an appellate merits brief-in-chief or other

appellate brief on the merits of the pertinent and relevant issues of his appeal. While there

concurrently exists another separate and distinct class of Oklahoma appellants under

Okla.Sup.Ct.R. 1.11(1)(e) who are mandatorily required to file a highly structured forensic

argument identifying and setting forth in an appellate brief the legal or factual errors or

omissions of the trial court's proceedings and/or orders, and to seek correction, clarification

or other relief from the appellate court. Should a Rule 1.36 appellant file a Rule 1.11(1)(e)

merits appellate brief, the Defendants acting under color of state law are mandatorily

required to *sua sponte* order enforcement[9] of that rule with that appellate merits brief to be

stricken and of no consequence and effect for the Oklahoma appellate courts or for the

parties. In the disposition of a Rule 1.36 appeal the Defendants who perform their appellate

functions without the benefit of a Rule 1.111(1)(e) appellate brief under that process they

necessarily must conflate, commingle, or fuse the traditional advocate's function into both

as an advocate with the function of a partisan judge for the resolution of the appeal for the

---

[8] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

[9] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

prevailing party.  Outwardly, it appears as if in Rule 1.36 unstructured appeals the Defendants, first, decide which party is to be the ultimate winner or the party who is to be the ultimate looser.  Second, Defendants then they search the appellate record to find facts and law to confirm and support facts and law their initial conclusion of which of the parties is to be the prevailing party.  In Rule 1.36 appeals the state appellate judiciary set out the facts which they have picked through the record and selected.  Often they recast and redraw the facts and issues to support their initial preconceived notion of which party must prevail for their final decision.  They also,  on their own initiative revive and address waived and moot trial court issues.  At all times the appellant's advocate is implacably and ruthlessly deprived and prohibited by Rule 1.36 from actually perform any advocacy function whatsoever, until after the Oklahoma appellate court has handed down its decision.  Only, after the entry of a Rule 1.36 decision or opinion, then and only then in his motion to reconsider may the appellant's attorney first file a brief on the issues addressing the issues raised by the appellate court.  Those issues are often not remotely the same issues as stated by the appellant, that are framed and set forth at the beginning of the appeal in the petition in error.  Public dockets of the Oklahoma appellate courts show that should a Rule 1.36 appellant be granted leave by those courts to file an appellant merits brief, the Defendants acting under color of state law will disregard or omit the issues and arguments raised by the parties in their merits brief in the appellate court's consideration and, nonetheless and rather, decide and dispose of that appeal on their review of the appellate record as they would in any other Rule 1.36 appeal.

1(c).   The Rule 1.36 beginning its effective date of January 1, 1997, is null, void, and

of no lawful effect, or consequence, and all Rule 1.36 appeals that have been or are before

the Defendants are undecided and remain undetermined, undecided and are ongoing.  This

is notwithstanding a 20 O.S. § 16 mandate may have issued and filed. Rule 1.36  is null, void

and of no consequence because it is in violation of all Rule 1.36 appellants' rights, interests,

including said appellants' property interests, privileges, and immunities guaranteed all

citizens under U.S. CONST., Art. IV, Privileges and Immunities, Sec. 1, and Full Faith and

Credit, Sec. 2; Art. VI, Sec. 2, Supremacy Clause; amend. I, right of access to state courts,

Free Speech, and amend XIV, § 1 both its equal protection clause and due process[10] clauses,

more specifically, as follows:  (i) Rule 1.36 denies all appellants their fundamental First

Amendment right of access to the Oklahoma appellate courts and to file a Rule 1.11(1)(e)

appellate merits brief to raise, advocate all of their claims and defenses, right to be heard,

right to counsel, the right to be represented by and to be assisted by counsel.  (ii) Rule

1.36(g) appellate proceedings deny Oklahoma appellants the right to equal access to justice

compared with appellate proceeding conducted under Rule 1.11(1)(e). (iii) Under Rule 1.36

appellate proceedings state appellants are denied an appellate hearing because appellants

cannot identify and raise issues, argue to seek the Defendants' to on appeal correct trial

court errors as well as the process of clarifying and interpreting law in their disposition of

---

[10] "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citing, Boddie v. Connecticut, 401 U.S. 371, 379 (1971) (emphasis in original)).

the appeal.   (iv) Appealed cases arrive at the Oklahoma appellate courts with the presumption of correctness of the trial court proceedings and orders.  A Rule 1.36 appeal is little more than an unstructured pursual of the trial record and, only, a review of the record retrial of the issues presented to the trial court without having the benefit of parties' briefs and the trial court proceedings, only, framing and narrowing of the unique issues for the appellate courts' possible consideration of issues and errors.  Also, in Rule 1.36 appeals an appellant cannot raise additional issues or error arising in the trial court after the entry of the trial court's final appealed order(s) themselves.  Without a Rule I.II(1)(e) merits brief the Oklahoma appellate courts sua sponte often revive waived, moot, or abandoned issues, restate the facts often adding facts that unsupported or outside the preserved record or omitting facts essential to the appropriate disposition of the appeal, or re-frame issues that have not been addressed by the trial court.  Trial court orders and proceedings cannot be changed or modified without the appellate courts being persuaded through an appellate's advocate filing a Rule 1.11(1)(e) appellate brief specifically addressing and showing trial court errors in efforts bearing the burden of persuasion to establish and frame the preserved issues of legal errors or omissions of the trial court in its proceedings or orders for the Justices and Judges of Oklahoma appellate courts to consider, and address, and dispose of the appeal on those facts and issues.  (v) Oklahoma Rule 1.36(g) summary appellate proceeding defeats the error-correction function of Oklahoma appellate review and does not protect state appellants from being wrongfully deprived of property without due process of law.  Minimal due process is permitting appellants to file a Rule 1.11(1)(e) appellate brief

for the Defendants' considering, addressing and disposing of the appeal. (vi). Rule 1.36's deprivation, prohibition, and ongoing threat of enforcement[11] against his right to file a Rule 1.11(1)(e) appellate brief is Defendants' denial under color of state law of Plaintiff civil right of access to the state appellate courts is their fundamental First Amendment Free Speech right. Otherwise, Plaintiff are denied Fourteenth Amendment due process of law. (vi) Parties' attorneys have a First Amendment right to raise relevant and colorable arguments in legal proceedings by filing a Rule 1.11(1)(e) appellate brief on behalf of clients. (vii) Rule 1.36's forbidding the appellate advocate's free speech rights deprive and prohibit state appellants to raise issues of trial court error, argue, and invoke the law to protect the Plaintiff life, liberty, and property. (viii) Under controlling applicable Oklahoma case law Rule 1.36 summary appellate proceedings are, essentially, predetermined or prejudged to be affirmed by the Defendants because the trial court proceedings are presumed to be correct. Further, under Oklahoma case law an appellant has the burden of persuasion based on preserved fact and law on the record proof of error. Only, through the filing of a Rule 1.11(1)(e) appellate merits brief he or she may overcome the appellate court's presumption of correctness of the trial court proceedings and orders for the Oklahoma appellate courts to correct, modify or affirm those trial court proceedings and orders. Under Rule 1.36 summary appeal proceedings Plaintiff as state appellants are deprived and prohibited and cannot specifically identify, argue and demonstrate to the Oklahoma appellate courts the

---

[11] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

errors in trial court's proceedings and orders.  (ix) An Oklahoma Rule 1.36(g) summary appellate proceeding defeats the appellate review and error-correction function of Oklahoma appellate review and does not protect appellants from being wrongfully deprived of property without due process of law through his filing of a Rule 1.11(1)(e) appellate brief.  (x) Rule 1.36's deprivation,  prohibition and ongoing threat of enforcement from his filing an appellate brief is Defendants' denial under color of state law of the Plaintiff's First Amendment right to access to the state appellate courts and that denial of access to the state appellate courts is also, Defendants' denial under color of state law of Hatton's fundamental First Amendment Free Speech rights. (xi) Plaintiff' First Amendment right to justice is far broader than the constitutionally-recognized right to court access.  Rule 1.36 deny state appellants him of his constitutional right to petition to speak on his behalf through the preparing and filing of a Rule 1.11(1)(e) appellate brief and to act as advocate and advisor in the Oklahoma Rule 1.36 summary appellate proceedings. Consequently, the Rule 1.36 appellate proceeding is Defendants' denial under color of state law of Plaintiff's attorney free speech rights that invokes the protections of existing law that is essential to Plaintiff' fully and completely accessing the justice system and for the Defendants' detached, fair and impartial administration of the laws.  (xii) Rule 1.36's deprivation, prohibition and threat of enforcement from his filing appellate merits briefs is a denial of all Rule 1.36 designated appellants' their First and Fourteenth Amendment due process of law right of access to the Oklahoma appellate courts. (xiii) Due Process Clauses prohibit the state and federal governments, and the Defendants from depriving Plaintiff' life, liberty, or

property without due process of law. Defendants' Rule 1.36 summary appellate proceedings under color of state law deprive Plaintiff of property by depriving and prohibiting, ordering stricken, or otherwise disregarding his 1.11(1)(e) appellate merits brief. The Due Process Clauses, thus, requires a hearing to be conducted with the Plaintiff having meaningful opportunity to be fully heard on the issues of fact and law through the right to file a Rule 1.11(1)(e) appellate brief to frame the preserved appellate issues of error of the trial court's proceedings and orders for the Oklahoma appellate courts to consider, address and to dispose. Because under Defendants' Rule 1.36 appellate proceedings attorneys are deprive and prohibit Hatton from raising such arguments through his filing of an appellate merits brief for the appellate court's consideration and disposition as they do in their Rule 1.11(1)(e) appeals Plaintiff are denied their First Amendment right of access to state appeals courts. Without having an appellate merits brief to consider and address, the Oklahoma state appellate judiciary cannot fulfill its U.S. Constitutional function to declare "what the law is." Consequently, in the Legal Servs. Corp. v. Velazquez, 531 U.S. 533 (2001) case there are two recognized categories of attorney in-court First Amendment free speech (including written and oral communications to a court) that must be protected: (1) attorneys must be free to "present all the reasonable and well-grounded arguments necessary for proper resolution of the case" and (2) regulators cannot restrict attorney speech in order to "insulate the Government's laws" or government action "from judicial inquiry" and scrutiny. (ixv) Okla.Sup.Ct.R. 1.36(g) summary appeals classification of the accelerated appeals proceedings depriving and prohibiting the filing of Rule 1.11(1)(e) appellate a brief-

in-chief is an Oklahoma court legislated practice rule acting under color of state law which has no purpose substantially related any important Oklahoma governmental objective. The classification of summary appeals which are conducted under Okla.Sup.Ct.R. 1.36(g), and, mostly, reach a predetermined outcome and, simply, affirm the trial court in state appellate court proceedings that objective is not substantially related to any important Oklahoma governmental objective. Therefore, lacking any important Oklahoma governmental objective Hatton's Oklahoma summary appeals conducted under Rule 1.36(g) is null and void of no force and effect as having violated the Hatton's Fourteenth equal protection of the law and all the proceedings conducted thereunder are likewise null, void and without force and effect. (xv) Rule 1.36 summary appellate proceedings do not pass the Mathews v. Eldridge three-factor balancing test for determining "what process is due" for Oklahoma appellants in their appellate proceedings compared with Rule 1.11(1)(e) merits briefed appeals. (xvi) The unconstitutional Rule 1.36 is to be addressed, considered and to be declared to be from the beginning or outset to be unconstitutional under the provisions of U.S. CONST., Art. IV, Privileges and Immunities, Sec. 1, and Full Faith and Credit, Sec. 2; Art. VI, Sec. 2, Supremacy Clause; amend. I, Free Speech, and amend XIV, § 1 both its equal protection clause and due process clauses as though Rule 1.36 had never existed or had been enacted by the Oklahoma Supreme Court. All proceedings that have been or are being conducted under Rule 1.36 are to be found and declared null, void, and from the outset to be without force and effect and all Rule 1.36 proceedings are to be ordered ongoing, vacated by the Defendants and each to be reheard by the Defendants.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343,

ancillary jurisdiction under 1367, 2201, 2202, and 42 U.S.C. §§ 1983 and 1988, in this action

where Plaintiff seeks prospective declaratory and prospective injunctive relief to redress

an ongoing violation of federal law[12] by Defendants for their deprivation of certain of

Plaintiff's rights secured by U.S. CONST., Art. I, War Powers, Sec. 8; Art. IV, Privileges

and Immunities, Sec. 1, and Full Faith and Credit, Sec. 2; Art. VI, Sec. 2, Supremacy Clause;

amend. I, free speech and right to petition; and amend XIV, § 1 both its equal protection

clause and due process clause provisions of the Constitution of the United States, under

color of state laws of their enforcement under color of state law of court rule Okla.Sup.Ct.R.

1.36(g), regulations, customs and usages of the Defendants as they judicially enacted and

continued to enforce[13] system wide throughout all the Oklahoma appellate court system.

Defendants have self-legislated, executed, administered and they

---

[12] In Ex parte Young, 209 U.S. 123, 159-160 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that allows individuals to seek prospective relief against state officials who violate federal laws or the Constitution. *See also* Rounds v. Clements, 495 F. App'x 938, 941 (10th Cir. 2012) (noting, "*Ex parte Young* permits suit against state employees for prospective relief whether the employee happens to be sued in his individual or official capacity") (citation omitted).  To fall within this exception, a plaintiff's complaint must allege an "ongoing violation of federal law," and seek relief that is "properly characterized as prospective." Verizon Md., Inc. v. PSC, 535 U.S. 635, 645 (2002) (citation and internal quotation marks omitted).  The requested relief "serves directly to bring an end to a present violation of federal law." Papasan v. Allain, 478 U.S. 265, 278 (1986).

[13] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

self-enforce[14] the complained of court rule: Okla.Sup.Ct.R. 1.36(g), in denial of

---

[14] NO IMMUNITY. In 1996 Congress enacted the Federal Courts Improvement Act of 1996 which amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Pub.L. No. 104-317, 110 Stat. 3847 (Oct. 19, 1996) (emphasis added). The Senate report indicates that the amendment "restores the doctrine of judicial immunity to the status it occupied prior to [Pulliam v. Allen, 466 U.S. 522, 541-42 (1984)]" because Pulliam had departed from "400 years of common law tradition and weakened judicial immunity protections." S. Rep. 104-366, at *36-*37, 1996 U.S.C.C.A.N. 4202, 4216-17. Defendants are without the immunity defense of 42 U.S.C. § 1983 in an action for declaratory and injunctive relief where in a state appellate proceeding being conducted before them and they enforce and threatened enforcement of Rule 1.36 which they have legislatively self-adopted. The United States Supreme Court has acknowledged that the Virginia Supreme Court and its chief justice would, for "the issuance of, or failure to amend, the challenged rules," enjoy the same type of absolute, legislative immunity generally afforded state legislators, Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 734 (1980). It noted that they were properly held **"liable in their enforcement capacities,"** and thus were **"proper defendants in a suit for declaratory and injunctive relief."** 446 U.S. at 736 (emphasis added). see also Leclerc v. Webb, 270 F. Supp. 2d 779, 791-72 (2003)("judicial immunity did not apply to acts taken by judicial officers in their enforcement capacities"), affirmed, 419 F.3d 405 (Fed. 5th Cir., 2005), reh'g en banc denied, 444 F.3d 428 (2006), cert. denied 551 U.S. 1158 (2007); Dubuc v. Michigan Bd. of Law Examiners, 342 F.3d 610, 619 n. 4 (6th Cir. 2003)(immunity was denied as to judicial defendants' enforcement of allegedly unconstitutional bar admissions rules regarding a waiting period for reapplication); Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 198 (3d Cir. 2000). This had the practical effect of dividing Consumers Union's claim into two suits: one dealing with the state justices' legislative activities, the other dealing with their enforcement activities. The Court noted that because the defendant-state justices were properly held liable in their enforcement capacities, there was no need to decide whether they were immune in their judicial capacities. 446 U.S. at 736. State officials including judges acting in an enforcement capacity are not immune from non-monetary damage injunctive and declaratory actions. Samuels v. McDonald, Case No. 17-5098 (10th Cir. Feb. 9, 2018), slip op., p. 5, n. 4,

> "[I]mmunity bars the § 1983 claim for money damages, they may be sued for injunctive relief. See Supreme Court of Virginia v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-737 (1980); Pulliam v. Allen, 466 U.S. 522 (1984); Lemmons v. Law Firm of Morris and Morris, 39 F.3d 264, 267 (10th Cir. 1994). Absolute immunity does not extend to "their official actions." Hafer v. Melo, 502 U.S. 21, 29 (1991))."

In Consumers Union, the Court respecting the separation of powers it expressly held the defendant state justices to be specifically liable in injunctive relief and declaratory relief, only, in their enforcement capacities, 446 U.S. at 736, just as other executive officials are liable in their enforcement capacities. Id; Samuels v. McDonald, supra. The 1996 amendment to 42 U.S.C. § 1983 is, expressly, for "an act or omission taken in such officer's judicial capacity" which does not include state justices or judges acting in a non-judicial "enforcement capacity." Cf., 446 U.S. at 736. This is so, because the Consumers Union suit, like this action sought to prospectively enjoin and a declaratory judgment against the state justices' enforcement of a court adopted rule, i.e., Rule 1.36, not for their promulgation or court legislation, of a state court rule; because the Virginia Supreme

the Plaintiff' rights, privileges, immunities secured by the United States Constitution, by

Acts of Congress and under common law, 12 O.S. § 2[15].[16]

3. This Court has personal jurisdiction over the Defendants, in their official capacity,

because inter alia, they have acted by legislatively adopted Rule 1.36 and they enforce and

threaten to enforce their procedural Rule 1.36 systemwide in the Oklahoma appellate court

system under color of state law, policies, customs, and other practices of the State of

Oklahoma and/or within the geographic confines of the State of Oklahoma.

4. Hatton is challenging the U.S. Constitutional validity of Oklahoma Supreme Court

Rule 1.36(g) in his <u>Hatton</u> appeal and as it is U.S. Constitutional facially and "as applied" to

his Oklahoma state court accelerated summary appeal proceedings conducted pursuant to

Rule 1.36. Without running afoul of *Rooker-Feldman* the state court rule, Okla.Sup.Ct.R.

---

Court and its chief justice exercised "inherent and statutory enforcement powers" in the adoption of the court rule; and because state justices acted as "enforcement officers and agencies" they are openly amenable to suit for "declaratory and injunctive relief." 446 U.S. at 736; <u>Samuels v. McDonald</u>, supra. When a judge or justice enforces a court legislated rule he or she is not acting in a judicial capacity as stated in § 1983, rather, he or she is acting an enforcement capacity and is subject to civil suit for injunctive and declaratory relief. Congress did not grant *carte blanche* immunity to state judges but specifically limited their immunity to "an act or omission taken in such officer's judicial capacity" and it did not enlarge § 1983 immunity to state judges for their acting in the enforcing of that court's self-adopted rules. 446 U.S. at 736; <u>Brandon E. ex rel. Listenbee v. Reynolds</u>, 201 F.3d at, 198. As exception to <u>Ex parte Young</u>, 209 U.S. 123, 159-160 (1908), Plaintiff has allege an "ongoing violation of federal law," and seek relief that is "properly characterized as prospective." <u>Verizon Md., Inc. v. PSC</u>, 535 U.S. 635, 645 (2002) (citation and internal quotation marks omitted).

[15] <u>Silver v. Slusher</u>, 1988 OK 53, ¶ 10, 770 P.2d 878, 883.(" There are three separate sources which **give rise to the creation of rights** under Oklahoma law: the state constitution, her statutes and her common law.")(footnote omitted and emphasis added).

[16] <u>Tenn. Elec. Power Co. v. Tenn. Valley Auth.</u>, 306 U.S. 118, 137 (1939) (recognizing the existence of legal rights arising from the common law of property, contract, and tort).

1.36(g), Hatton can challenge in U.S. District Court under § 1983 on grounds that rule and all the proceedings conducted thereon in Hatton's Oklahoma appeal is from the beginning null, void, and of no force or effect whatever under U.S. CONST., Art. IV, Privileges and Immunities, Sec. 1, and Full Faith and Credit, Sec. 2; Art. VI, Sec. 2, Supremacy Clause; amend. I, and amend XIV, § 1 both its equal protection clause and due process clauses and prospective injunctive and declaratory relief granted. Under common law Hatton has a due process property right to file an appellate merits brief in Oklahoma appeals. Not filing an appellate brief is contrary to the common law 12 O.S. § 2 proceedings under Okla.Sup.Ct.R. 1.36(g). Under 28 U.S.C. § 2201, a 42 U.S.C. § 1983 action may be prosecuted declaring Okla.Sup.Ct.R. 1.36(g) and the proceedings thereon, be declared to be null, and void from its inception and immediately enjoined. Also, Hatton seeks to have his pending appeal now being conducted by the Defendants under color of state law Oklahoma Supreme Court and the Court of Civil Appeals of the State of Oklahoma, *Hatton* appeal and all other Okla.Sup.Ct.R. 1.36(g) appellate proceedings permanently enjoined. And, that all other Oklahoma appellate proceedings conducted under Rule 1.36(g) governing that decision is to be declared, also, to be null and void and this Court ordering all such appeals to be vacated. Skinner v. Switzer, 562 U.S. 521, 532 (2011) ("[A] state-court decision is not reviewable by lower federal courts, but a statute or a court rule[, e.g., Rule 1.36(g) rule] governing the decision may be challenged in a federal action."); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 487 (1983)(Held: "a general attack on the constitutionality of" the court legislated bar admission rule, the Court held that the district

court did "ha[ve] subject matter jurisdiction" over those claims and remanded for further proceedings."). This Court has subject matter jurisdiction over this 42 U.S.C. § 1983 action because Hatton now challenge, specifically, targets the controlling state court rule, Okla.Sup.Ct.R. 1.36(g), then *Rooker-Feldman* does not apply. Because Rule 1.36(g) deprives and prohibits Hatton as a state appellant from filing of a highly structured forensic appellate brief in the state court appellate proceeding, from his raising and advocating all of his appellate claims and issues. Therefore, Defendants deny Plaintiff his rights under the First Amendment free speech and right to petition, and Fourteenth Amendment equal protection and due process claims or any other of his issues or claims the in their final decision and, therefore, all Rule 1.36 proceedings cannot have entered or be a final order or decision. Bear v. Patton, 451 F.3d 639, 642 (10th Cir. 2006); Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006); McCammon v. Bibler, Newman & Reynolds, P.A., 493 F. Supp. 2d 1166, 1170-71 (D. Kan. 2007) (citing five federal court cases). Thus, (1) the informal summary appellate procedures conducted by the Defendants under color of state law in Plaintiff Rule 1.36(g) appellate proceedings are and is constitutionally inadequate or (2) that particular state appellate proceeding subverts Hatton's equal access to justice, First Amendment free speech rights and right to petition, Fourteenth Amendment equal protection of the law and due process of the law, then under the First and Fourteenth Amendments a federal forum is available to vindicate the Plaintiff rights to free speech, right to petition, procedural due process and equal protection in Hatton's appellate proceeding under § 1983. Indeed, a due process claim that one has been injured by

-17-

inadequate or defective procedures are another "independent claim," of the type to which the Supreme Court was referring in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). Plainly, state-court appellate proceedings under Rule 1.36(g) which bar, deprive and prohibit appellants from filing a merits briefs is an inadequate appellate procedure and subverts Hatton's equal access to justice, First Amendment free speech and the right to petition, Fourteenth Amendment equal protection of the law and due process of the law, then under the First and the Fourteenth Amendment and § 1983 this federal forum is available to vindicate the Hatton' right to equal access to justice, free speech, right to petition, procedural due process and equal protection of the law in that Oklahoma appellate proceeding. Unsurprisingly, federal courts have repeatedly recognized that real § 1983 due process claims (as opposed to claims that in substance merely complains about state courts making a mistake) are not barred by *Rooker-Feldman*. See Great W. Mining & Mineral Co. v. Fox Rothschild L.L.P., 615 F.3d 159, 173 (3d Cir. 2010) (holding *Rooker-Feldman* inapplicable where plaintiffs alleges "a conspiracy to reach a predetermined outcome in state court"); Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1030 (9th Cir. 2005)("MHC's complaint does not directly challenge a state court's factual or legal conclusion. MHC's complaint to the district court is, therefore, not a forbidden appeal under *Rooker-Feldman*."); Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995) (same, recognizing that "[o]therwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment[.]").

-18-

4(a)(1). **FIRST GROUND FOR STANDING TO SUE:** Plaintiff has standing to obtain declaratory and prospective injunctive relief because they have existing, ongoing and pending Rule 1.36(g) summary appeal <u>Hatton</u> appeal presently before the Defendants. This challenged action, i.e., Rule 1.36's deprivation, prohibition and threat of enforcement against Plaintiff filing an appellate brief was in its duration was too short to effectively challenge because (i) upon filing the respective petition-in-error for their respective appeals and the Defendants' assignment of those appeals to the Rule 1.36 summary disposition docket those respective appeals were virtually *instanter* assigned to the Rule 1.36 summary disposition docket. (ii) There is a reasonable expectation that in the future should this Plaintiff attempt to file a merits appellate brief in his pending appeal that brief, likely, that rule will be enforced and ordered stricken under Rule 1.36 's deprivations, prohibitions, and threat of enforcement by the state appellate courts. (iii) Also, in the future should Plaintiff seek and obtain leave to file a merits appellate brief, file a brief, that nonetheless brief will be disregarded and their decision will be entered under the provisions of Rule 1.36 thereby disregarding and circumventing the appellate courts' consideration of the Plaintiff merits appellate brief, thereby subjecting Plaintiff the same resultant Rule 1.36 appellate opinion again. <u>Jordan v. Sosa</u>, 654 F.3d 1012, 1035 (10th Cir. 2011)(citing <u>Weinstein v. Bradford</u>, 423 U.S. 147, 149 (1975) (per curium). Plaintiff has standing to sue in this Court to obtain declaratory judgment and prospective injunctive relief against Rule 1.36's policy to which he has sustained 42 U.S.C. § 1983 injuries at the hands of the state actor Defendants who are in charge of implementing and enforcing that

court rule systemwide. <u>Walker v. Beard</u>, 789 F.3d 1125, 1132 (9th Cir. 2015)(citing <u>Jordan v. Sosa</u>, 654 F.3d 1012, 1028–29 (10th Cir. 2011); see also <u>Lehn v. Holmes</u>, 364 F.3d 862, 871–72 (7th Cir. 2004); <u>Nelson v. Heiss</u>, 271 F.3d 891, 893, 897 (9th Cir. 2001).   That Plaintiff's injury: Rule 1.36's deprivation, prohibition and threat of enforcement from his filing of an appellate merits brief will be redressed by a favorable decision in this Court granting him declaratory and prospective injunctive relief.  Because Rule 1.36 is null, void and having no force and effect any and all proceedings, decision or opinion rendered in the pending Rule 1.36 appeals by Defendants and Rule 1.36 proceedings are also null, void, and has no force and effect and therefore, the proceeding would be ongoing injury to the Plaintiff.  See Paragraph 28, below.  Without immediate prospective injunctive relief from this Court Plaintiff have reasonable expectations that in the Defendants will enter a null and void decision should Plaintiff file merits appellate briefs in their, respective, pending appeals those briefs will be ordered stricken or otherwise disregarded by Defendants and rather, be decided under Rule 1.36.

4(a)(2).  **SECOND GROUNDS FOR STANDING TO SUE**[17]: Plaintiff has sustained or suffered injury in fact because he is being deprived and prohibited by Rule 1.36 from filing

---

[17] To establish Article III standing, a plaintiff must establish (1) that he or she has "suffered an injury in fact;" (2) that the injury is "'fairly traceable to the challenged action of the defendant;'" and, (3) that it is "likely" that "the injury will be redressed by a favorable decision." <u>Ariz. Christian Sch. Tuition Org. v. Winn</u>, 563 U.S. 125, 131 S. Ct. 1436, 1442 (2011) (quotations omitted); see also <u>Jordan v. Sosa</u>, 654 F.3d 1012, 1019 (10th Cir. 2011). "At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." <u>Massachusetts v. E.P.A.</u>, 549 U.S. 497, 517 (2007) (quotations omitted).

an appellate merits brief in his appeal pending before the Defendants. Because he have and

is been injured in fact by Defendants' Rule 1.36 depravation, prohibition and enforcement

from his filing of an appellate merits brief because he has suffered an injury in fact. (ii) that

the injuries sustained by Plaintiff are at the hands of the Defendants and are directly and

fairly traceable to the challenged action of the Defendants which is the Rule 1.36's

deprivation, prohibition and enforcement against Plaintiff filing an appellate merits brief.

(iii) That it is likely that the Plaintiff injuries will be redressed by a favorable decision,

essentially, declaring Rule 1.36 unconstitutional. Ariz. Christian Sch. Tuition Org. v. Winn,

563 U.S. 125, 131 S. Ct. 1436, 1442 (2011) (quotations omitted); see also Jordan v. Sosa,

654 F.3d 1012, 1019 (10th Cir. 2011).   The question of standing is set forth in this

complaint because Plaintiff have such a personal stake in the outcome of the present

ongoing controversy as to assure this Court that concrete adverseness which sharpens the

presentation of issues upon which the court so largely depends for illumination.

Massachusetts v. E.P.A., 549 U.S. 497, 517 (2007). This Federal District Court may

exercise jurisdiction over a seemingly moot action because these Plaintiff asserting that

the exception applies on the factual grounds that this Plaintiff "(i.) the challenged action

was in its duration too short to be fully litigated prior to its cessation or expiration [because

these Plaintiff were and is under Rule 1.36 specifically deprived, prohibited and barred

from filing an highly forensic merits brief-in-chief or opening brief as required by

Okla.Sup.Ct.R. 1.11(1)(e), and (2) there [is] a reasonable expectation that the same

complaining party would be subjected to the same action again," should they attempt to file

such a brief. <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982) (emphasis added) (quoting

<u>Weinstein v. Bradford</u>, 423 U.S. 147, 149 (1975)); see <u>Jordan</u>, 654 F.3d at 1035.  In other

words, in the Plaintiff' pending <u>Hatton's</u> ongoing state appeal  under the provisions Rule

1.36 the Plaintiff (a) are being prevented from filing an appellate merits brief-in-chief

because of the specific deprivation, prohibition and real and ongoing threat of enforcement

of Rule 1.36(g) from filing an appellate brief-in-chief, and, also, there is a reasonable

expectation in the pending state appeal that should this Plaintiff or any appellant attempt

to file an appellate brief-in-chief in the future that appeal brief it will be ordered stricken

by the state appellate court under <u>Ladra v. New Dominion, LLC</u>, 2015 OK 53, ¶ 6, 353 P.3d

529, 531. See, e.g., <u>Simington v. Parker</u>, 2011 OK CIV APP 28, ¶ 6, 250 P.3d 351, 353-54"

<u>O'Feery v. Smith</u>, 2001 OK CIV APP 142, ¶ 3, 38 P.3d 242, 244"; <u>Ladra v. New Dominion,

LLC</u>, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.   Moreover, in the future this Plaintiff could in

the pending state appeal seek leave from the state court to file a brief-in-chief.  And should

the Plaintiff' be granted leave by the Defendant to file an appellate merits brief-in-chief in

their pending <u>Hatton'</u> Rule 1.36 summary appellate proceeding.  Nonetheless, based upon

prior orders in other Oklahoma  appeals that have been entered by the Defendants'

granting other appellants leave to file a brief-in-chief Plaintiff' have a reasonable

expectation that the Defendant would overlook or disregard their filed brief-in-chief and,

rather, would  in their disposition and decision in the Hatton' pending appeal Defendants

in fact would decide and dispose of that Rule 1.36 appeal not on the merits of the

arguments set forth in the parties' appellate briefs but, rather, only, under Rule 1.36

proceedings in denial of Plaintiff' First Amendment right of access to that state appellate Court. That it is likely that the injury sustained by Plaintiff, Defendants' depravation and deprive and prohibition from his filing an appellate merits brief will be redressed by a favorable decision in this Court granting him declaratory and prospective injunctive relief.

4(b).    SECOND GROUND FOR STANDING TO SUE[18]:    Plaintiff has sustained and is sustaining personal injuries traceable to the Defendants' unlawful conduct of depriving, prohibiting, barring and ongoing threat of enforcement[19] under Rule 1.36 from his filing a merits brief substantially as the Defendants' mandatorily require under proceedings conducted under Okla.Sup.Ct.R. 1.11(1)(e) appeals. Thereafter, the Defendants are not to overlook or otherwise disregard the merits brief but are to fully consider and make their final decision or disposition framed substantially on the merits of the issues framed by the merits of the arguments contained in the parties' brief-in-chief or merits appellate brief and the grant of a prospective injunctive relief and for declaratory determining appellate proceedings conducted under Rule 1.36 to be null and void likely to be redressed by the requested relief. Plaintiff have also alleged that they have suffered a particularized injury

---

[18] To establish Article III standing, a plaintiff must establish (1) that he or she has "suffered an injury in fact;" (2) that the injury is "'fairly traceable to the challenged action of the defendant;" and, (3) that it is "likely" that "the injury will be redressed by a favorable decision." Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 131 S. Ct. 1436, 1442 (2011) (quotations omitted); see also Jordan v. Sosa, 654 F.3d 1012, 1019 (10th Cir. 2011). "At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." Massachusetts v. E.P.A., 549 U.S. 497, 517 (2007) (quotations omitted).

[19] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

right to access the state court by filing a merits appellate brief; injury to the public is not

sufficient to establish standing. See <u>Friends of the Earth, Inc., v. Laidlaw Envtl. Servs.</u>

<u>(TOC), Inc.</u>, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)."Article III of the United

States Constitution limits the jurisdiction of federal courts to the adjudication of 'Cases' or

'Controversies.'" <u>Jordan v. Sosa</u>, 654 F.3d 1012, 1019 (10th Cir. 2011), quoting U.S. Const.

art. III, § 2, cl. 1. "[T]he controversy must be real and substantial, admitting of specific

relief through a decree of conclusive character, as distinguished from an opinion advising

what the law would be upon a hypothetical set of facts." Id. at 1026 (internal quotation

marks and alterations omitted).  Standing is a threshold question in every case before a

federal court, and it determines the power of the court to entertain the suit. <u>Warth v.</u>

<u>Seldin</u>, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).  A federal court

must ask "whether the constitutional, [court rule,] or statutory provision on which the

claim rests properly can be understood as granting persons in the plaintiff's position a right

to judicial relief." <u>Warth v. Seldin</u>, at 500, 95 S.Ct. at 2206, (footnote omitted). The

Supreme Court defined the constitutional requirements of standing in <u>Allen v. Wright</u>, 468

U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984): "A plaintiff must allege

personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to

be redressed by the requested relief." Thee injury sustained by Plaintiff, i.e., Defendants'

deprivation, prohibition and real and ongoing threat of enforcement from his filing an

appellate merits brief in Rule 1.36 summary appeals will be redressed by a favorable

decision in this Court granting them declaratory and prospective injunctive relief. Plaintiff

may be subjected to Rule 1.36(g) in the future because all state appellants are incurring a continuing "credible threat" and of a Rule 1.36 injury to themselves in the Oklahoma appellate courts. The full scope of the Okla.Sup.Ct.R. 1.36(g) to pending and future appellate litigation involving them because, they now are sustaining continuing and ongoing injuries for that Oklahoma appellate court failing to protect the Hatton as the appellants in the <u>Hatton</u> appeal whom have vested entitlements under the First Amendment free speech and right to petition, Fourteenth Amendment due process rights and interests granted to them are which are being denied under Rule 1.36(g) which is they are not to file an appellate brief as appellee in any appeal, and rather under Rule 1.36(g) that appellate court is obligated conduct the necessary research on behalf of the appellee and to protect the Hatton through their having to conduct the necessary Rule 1.36 inquiry, research, and due diligence which is established by custom and usage under § 1983[20].

4(c) FOURTH GROUNDS FOR RIGHT OF ACCESS TO THE OKLAHOMA

---

[20] Established by the historic records there in fact custom and usage establish that no standards exist for Oklahoma Justices or appellate judges to convert any appeal with or without a party's motion to a Rule 1.36 appeal. <u>Pierson v. Joplin</u>, 2016 OK 40, ¶ 11 (unreported converted to Rule 1.36 appeal); <u>Lockett v. Evans</u>, 2014 OK 34, ¶ 1, 330 P.3d 488; <u>Towne v. Hubbard</u>, 1999 OK 10, ¶7, 977 P.2d 1084 (application for extraordinary writ to prevent removal of attorney of record converted to appeal and placed on accelerated appeal schedule to be governed by provisions of Sup.Ct.R. 1.36, but permitting briefs on appeal); <u>Stripling v. State ex rel. Oklahoma Health Care Authority</u>, 2017 OK CIV APP 6, ¶ 1, 394 P.3d 293 (denial of an employment termination petition); <u>Rabin v. Bartlesville Redevelopment Trust Authority</u>, 2013 OK CIV APP 72, ¶ 1, 308 P.3d 191; <u>Klein v. Department of Corrections</u>, 2012 OK CIV APP 79, ¶ 5, 283 P.3d 901. Therefore, the established "custom and usage" provision of § 1983 comes to play. <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691696, (1978); <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981); <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1443 (11th Cir. 1985)

COURTS STANDING FOR Plaintiff RIGHT TO REMEDY IN THIS COURT. The Hatton

are making a free speech, right of access, and equal protection challenge to Rule 1.36.[21]

The Constitution provides the Hatton' First Amendment free speech rights, right of access

to state and federal courts, and equal protection rights in their Hatton' state appeal.  First

Amendment rights to freedom of speech are enforceable under 42 U.S.C. § 1983. Waters

v. Churchill, 511 U.S. 661, 668 (1994).  Equal protection rights are, also, enforceable under

42 U.S.C. § 1983.  The Supreme Court's decision in Bivens v. Six Unknown Named Agents

of Federal Bureau of Narcotics, 403 U.S. 388 (1971) is consistent with its conclusion that

the Constitution confers private rights.  Following Bivens, the Court recognized similar

implied rights of action for violation of the Hatton's free speech rights in their Oklahoma

Hatton' appeal under the Equal Protection component of the Fifth and Fourteenth

Amendments' Due Process Clause. Davis v. Passman, 442 U.S. 228, 234 (1979).  The

Hatton may challenge Rule 1.36 and proceedings thereunder under the First Amendment

free speech, and right of access to the state court guarantees, and equal protection

guarantees merely by demonstrating that the court rule 1.36 violated a public right of

access to state courts under Rule d1.36.[22] Rule 1.36 appellate proceeding was and is

---

[21] See, Benjamin Plener Cover, The First Amendment Right to a Remedy, 50 U.C. Davis L. Rev. 1741, 1797-1798 (2017). Available at SSRN: https://ssrn.com/abstract=2780722

[22] The personal stake requirement is only a threshold requirement for bringing suit. The Hatton have an interest may raise any legal argument, including an argument based solely on public interests. In other words, the mere fact of an individual's injury, no matter how minute or fortuitous, enables that individual to make assertions about the public interest despite the injury's being entirely personal. Of course, the court has discretion not to hear

Defendants' violation of the fundamental public right of Plaintiff First Amendment right

of access to the Oklahoma appellate courts. Defendants' Rule 1.36's deprivation, denial or

prohibition of the Plaintiff exercise of their valid civil public right to file an appellate merits

brief in all Oklahoma appeals is a right secured by the Constitution, federal law, state law

or the common law. Plaintiff's First Amendment right of access claim of right to file an

appellate brief is Plaintiff's injury-in-fact and that is evaluated under First Amendment

standing doctrine, which is distinctly permissive towards Plaintiff. See Cooksey v. Futrell,

721 F.3d 226, 235 (4th Cir. 2013) ("In First Amendment cases, the injury-in-fact element

is commonly satisfied by a sufficient showing of 'self-censorship, which occurs when a

claimant is chilled from exercising h[is] right to free expression.'") (quoting Benham v.

City of Charlotte, 635 F. 2d 129, 135 (4th Cir. 2011)). "[W]hen there is a danger of chilling

free speech, the concern that constitutional adjudication be avoided whenever possible may

be outweighed by society's interest in having the statute [or this court Rule 1.36]

challenged". Secretary of State of Md. v. Joseph H. Munson Co., Inc., 467 U.S. 947, 956

(1984)). This "leniency of First Amendment standing manifests itself most commonly in

the doctrine's first element: injury-in-fact." Cooksey, 721 F.3d at 235; St. Paul Area

Chamber of Commerce v. Gaertner, 439 F.3d 481 (8th Cir. 2006). The standing

requirement for federal court jurisdiction stems from the admonition in Article III of the

---

certain arguments under the third-party standing doctrine, which provides that "a party
'generally must assert his own legal rights and interests, and cannot rest his claim to relief on
the legal rights or interests of third parties.'" Kowalski v. Tesmer, 543 U.S. 125, 129 (2004)
(quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).

Constitution that federal courts are empowered to decide only "cases" and "controversies." U.S. Const. art. III, § 2, cl.1. To satisfy the Article III requirement, a party that challenges a statute [or Rule 1.36] in federal court must demonstrate that it has suffered an "injury in fact," i.e., "a realistic danger of sustaining a direct injury as a result of the statute's [or court Rule 1.36's] operation or enforcement." <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979). Defendants' Rule 1.36 prohibition of Plaintiff from filing an appellate merits brief under color of state law.  That Rule 1.36 prohibition and the real and continuing threat of Defendants enforcement of that Rule is the basis of Plaintiff' Art III because Defendants' thereby deprive, deny or prohibit Plaintiff' access to state courts, alone.  The Defendants' Rule 1.36 deprivation of Plaintiff' right of access to Oklahoma appellate courts, alone, satisfies the Article III requirement for standing to sue because the Plaintiff' have suffered a First Amendment direct injury in fact as a result of Defendants' Rule 1.36's deprivation, prohibition, operation or ongoing and real threat of enforcement in his <u>Hatton</u> appeal by depriving, prohibiting and real and ongoing threat to him of his right to file an appellate merits brief and therefore block his access to the Oklahoma appellate courts. The Defendants' denial of Plaintiff' access to the Oklahoma appellate courts under Rule 1.36's deprivation, prohibition, and real and ongoing threat of enforcement against Plaintiff's First Amendment right of access to Oklahoma appellate courts through their filing an appellate merits briefs in their <u>Hatton</u> appeal and the remedy Plaintiff' seek from this Court is to have Rule 1.36 declared unconstitutional under their First Amendment right of access to those state court, and Rule 1.36 and the proceedings conducted

thereunder are sought to be enjoined is their remedy claim.[23] Plaintiff can, therefore, pursue their remedies under their First Amendment civil right of access to the state appellate court is their standing to sue.  Defendants' Rule 1.36 and the proceedings conducted under Rule 1.36 are the Defendants' deprivation of Plaintiff First Amendment right of access to court and, also, their deprivation and denial their private and public right of meaningful[24] access[25] to the Oklahoma appellate courts is the basis for Plaintiff

---

[23] "[t]he essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Christopher v. Harbury, 536 U.S. 403, 413 (2002).

[24] Meaningful access to state and federal courts is a fundamental right within the protection of the First Amendment.  First Amendment rights are "supremely precious" freedoms and are subject to heightened protection. NAACP v. Button, 371 U.S. 415, 433 (1963) (noting that First Amendment freedoms, including the right to petition, are "delicate and vulnerable, as well as supremely precious in our society" and demand exacting protection).  In California Motor Transport v. Trucking Unlimited, that "[t]he right of access to the courts is indeed but one aspect of the right of petition." 404 U.S. 508, 612 (1972). Rule 1.36's deprivation and prohibition against Plaintiff from filing an appellate brief is a deprivation, prohibition and denial of their right of access to the Oklahoma appellate court, and, too, is the Defendants deprivation, and prohibition to them of their "fundamental" and "supremely precious" right of their meaningful access to that court.  In Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803) the Supreme Court first recognized that a person who has suffered a legally cognizable injury inflicted by a court and therefore has standing and the right to obtain a remedy in federal court:  " '[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury,' " the court concluded that, under the circumstances, the plaintiff had stated a cause of action for damages directly under the fourth amendment." Id.

[25] The Supreme Court emphasized the link between the right and remedy:

> [T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong . . . . [T]he wrong [of the denial to access by another court] is ancillary to the underlying claim [of legal wrong by the defendants' unconstitutional Rule 1.36 and proceedings thereunder prohibiting them from filing an appellate merits brief], without which a plaintiff cannot have suffered injury by being shut out of court.

Christopher v. Harbury, 536 U.S. at, 413-14.

forward-looking access to this Court, because at the time of filing this action that state

appeal has yet to be litigated to term. However, during the course of this action should the

Defendants' enter a decision in their <u>Hatton</u> state appeal Plaintiff right of access[26] standing

to pursue claims against the Oklahoma appellate courts will *ipso facto* convert to and will

have become, thereafter, backward-looking standing. With Plaintiff having their forward-

looking standing being *instanter* converted through the Defendants' sole action of their

entering a putative or supposed state decision in the <u>Hatton</u> appeal, into backward-looking

standing and the Hatton having uninterrupted and ongoing standing with their right to

continue to pursue their denial of access claim in this Court. In other words, because of

backward-looking standing a Defendants' decision in the <u>Hatton</u> state appellate court

cannot cause the defeat of Plaintiff First Amendment denial of their right of access claim

in this Court and Plaintiff are not to be deprived and prohibited from pursuing their right

of access claim in this Court. <u>Christopher v. Harbury</u>, 536 U.S. at, 413-14.  A Defendants'

state decision or their other disposition during the course of this law suit in the Plaintiff's

state <u>Hatton</u> appeal will not defeat Plaintiff First Amendment standing in this Court.  In

---

Plaintiff are asking this Court under its ancillary powers, 28 U.S.C. § 1367, to remedy and to correct the first wrong: the Defendants' denial of their First Amendment right of access to the Oklahoma appellate courts that is now deprived and prohibited by Defendants' Rule 1.36(g)'s against their filing a merits brief in their <u>Hatton</u> appeal.  Thereafter, under 28 U.S.C. §§ 1331, 1343, 1367, 2201, 2202, and 42 U.S.C. §§ 1983 the second wrong: the Plaintiff are, additionally, asking this Court to remedy and to correct through its finding and declaring Rule 1.36 under several of its provisions to be found an unconstitutional Rule and for other specific relief more fully set forth in their prayer for relief, below.

[26] The First Amendment right of access to the state and federal courts is grounded in the Right to Petition Clause of the First Amendment, <u>Christopher v. Harbury</u>, 536 U.S. at, 415, n. 12.

either event whether this action is either, forward-looking or backward-looking Plaintiff
standing will continue ongoing throughout the pendency of this case until this Court
redresses the right of access injuries sustained by Plaintiff at the hands of the Defendants
through the life of this case this Court's granting and its ongoing enforcement of Plaintiff
right of access including  Plaintiff requested prospective declaratory and/or injunctive
relief forever. Id.  Alternatively, Defendants' Rule 1.36 and proceedings thereunder will
have caused Plaintiff First Amendment injury of their right of access to  because the
Oklahoma appellate courts have impeded their a chance to advocate their meritorious
claim.  Defendants' Rule 1.36's deprivation, prohibition and real and ongoing threat of
enforcement against his right of access to state court against Plaintiff First Amendment
right to file an appellate merits brief in their state appeal is Plaintiff Art III standing in this
Court. Id. at 414.  In the event the Defendants' decide the <u>Hatton</u>' appeal in state court
proceedings during the pendency of this action Plaintiff have stated a First Amendment
right of access claim for Defendants' backward-looking standing denial of Plaintiff First
Amendment right of access to the state appellate courts because of Defendants' Rule
1.36(g)'s deprivation, prohibition and real and ongoing threat of enforcement against
Plaintiff's right to file an appellant merits brief in their state appeal thereby sustaining
continuing and ongoing injury to their right of access at the hands of the Defendants
because their underlying First Amendment claim to right of access to Oklahoma courts
would have been lost, impeded, deprived, or prohibited by the Defendants. Id. at 415-16.
Because these backward-looking cases are brought to get relief unobtainable in other suits,

the remedy sought is identified as: this Court is to make a determination and enter an order that Rule 1.36 and Rule 1.36 proceedings are in this Court to be declared to be unconstitutional, null, void and of no effect, all Rule 1.36 proceedings ordered vacated and Rule 1.36 proceedings are to be enjoined forever. Id., at 416.  At all times Plaintiff standing is establish in this First Amendment right of access, because the Plaintiff have been deprived and have been prohibited of their right of access by Defendants' Rule 1.36(g) from their filing an merits appellate brief and the Defendants' Rule 1.36 proceedings conducted in their <u>Hatton</u> state appeal deprive Plaintiff right of access to those state courts. Defendants' deprivation, prohibition and real and ongoing threat of enforcement[27] of Plaintiff right of access to the Oklahoma appellate courts under Defendants' Rule 1.36 "has explicitly [deprived,] prohibited or proscribed conduct on the[ir] part. <u>Parsons v. U.S. Dep't of Justice</u>, 801 F.3d 701, 711 (6th Cir. 2015) (citing <u>Clapper v. Amnesty International,</u> 568 U.S. 398, 133 S.Ct. 1138 264 (2013);  <u>Nat'l Right to Life Political Action Comm. v. Connor</u>, 323 F.3d 684 (8th Cir. 2003)).  In this typical case, Defendants' Rule 1.36 appeal is being conducted and enforced by them against the Plaintiff in denial of their First

---

[27] Under the rules for accelerated summary judgment appeal, no briefing shall be allowed unless ordered by the appellate court. Okla. Sup. Ct. R. 1.36(g). Instead, "'[a]n appellate court shall confine its review to the record actually presented to the trial court.' Id. It is evident, therefore, that a party shall not include new arguments or authorities--which would have the effect of briefing the issues--in her Petition in Error. When a party attempts to circumvent this rule, appellate courts are to strike those parts of the petition that exceed the scope allowed by Rule 1.36(g). See, e.g., <u>Simington v. Parker</u>, 2011 OK CIV APP 28, ¶ 6, 250 P.3d 351, 353-54" <u>O'Feery v. Smith</u>, 2001 OK CIV APP 142, ¶ 3, 38 P.3d 242, 244"; <u>Ladra v. New Dominion, LLC</u>, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.  Plainly, Rule 1.36 "as applied" is strictly enforced to fully deprive, prohibit and prevents appellants Hatton their exercise of thir First Amendment Due Process right of access to that court through probiting the filing of an appellate merits brief.

Amendment right of access by the Defendants giving rise to this challenge to Rule 1.36's right of access constitutionality. Also, Defendants' pre-enforcement of Rule 1.36 is, also, available to establish their standing in the context that Defendants' "threatened enforcement [is] sufficiently imminent" — that is, there is "a credible threat" that the provision will be enforced against the Plaintiff in their <u>Hatton</u> state appeal. <u>Susan B. Anthony List v. Driehaus</u>, ___ U.S. ___, 134 S.Ct. 2334, 2342 (2014). "For purposes of standing, we must assume the Plaintiff claim has legal validity." <u>Initiative & Referendum Inst. v. Walker</u>, 450 F.3d 1082, 1092–93 (10th Cir.2006) (en banc). In Oklahoma appellate proceedings Defendants must allow the Plaintiff as state appellants' "adequate, effective and meaningful" access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977) (holding that state defendants must give inmates access to law libraries or direct legal assistance). Defining Plaintiff' adequate, effective, and meaningful right of access to state appellate courts in <u>Legal Servs. Corp. v. Velazquez</u>, 531 U.S. 533 (2001)[28], the Court held that advocates in proceedings before courts have a First Amendment right to raise all relevant and colorable arguments in legal proceedings on behalf of clients. Id., at 545. Consequently, the <u>Velazquez</u> Court recognized two categories of an advocate's in-court First Amendment free speech (including written and oral communications to a court) that must be protected by this Court: (1) advocates must be free to "present all the reasonable

---

[28] See <u>Velazquez</u>, 531 U.S. at 545 ("By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power." (emphasis added)

and well-grounded arguments necessary for proper resolution of the case" 531 U.S. at 545;

and (2) state Defendants cannot restrict an advocate's free speech in order to "insulate the

[state] Government's laws" or state government action "from judicial inquiry" and its

scrutiny in this federal Court. 531 U.S. at 546. Defendants' Rule 1.36 deprive and prohibit

Plaintiff right of access and from their rightfully filing a merits appellate brief in Rule 1.36

appeals and thereby have injured Plaintiff adequate, effective, and meaningful right of

access to state appellate courts. Id., at 545. Defendants' Rule 1.36 and their enforcement

or threatened enforcement against Plaintiff is sufficiently imminent that is, there is a

credible threat of Plaintiff sustaining injuries under that Rule 1.36(g)'s provision ordering

Plaintiff appellant merits brief will be enforced against the plaintiff by Defendants' sua

sponte ordering their appellant brief ordered stricken, or otherwise overlooked and

disregarded. Defendants' threat and/or the credible threat of the Defendants' enforcement

of Rule 1.36 violate the Plaintiff's First Amendment right of access to state appellate courts

by their depriving and prohibiting Plaintiff from filing an appellate brief in the Hatton'

appeal, now, pending in Oklahoma appellate courts. Plaintiff have sustained injury in fact

to their First Amendment right of access to state appellate by Defendants' enforcement

and through the credible threat of enforcement[29] of their deprivation, prohibition and real

and ongoing threat of enforcement under Rule 1.36 to "[C]ourts have found a cause of

---

[29] Citizens, generally, under the Supreme Court decision Christopher v. Harbury are now allowed to bring First Amendment claims. First Amendment claims are no longer limited to prisoners.

action for violation of the right of access stated where it was alleged that prison officials

confiscated and/or destroyed legal materials." Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir.

1992) (citations omitted).  Defendants' violation of the Plaintiff First Amendment right of

access to the courts is established in this Court because Plaintiff has shown this Court that

they are actually in fact injured by the denial of access to the Oklahoma appellate courts

by the Defendants.  The actual injury in fact is Defendants' denial of access to Oklahoma

appellate court establishes Plaintiff standing in this Court and their standing is, also, met

for their ancillary claim is the, sole, Defendants' First Amendment denial of right of access

is the constitutional prerequisite to their bringing this suit in this Court. Lewis v. Casey,

518 U.S. 343, 351 (1996); Christopher v. Harbury, 536 U.S. at, 415 (explaining that the

constitutional right of access to state or federal courts is "ancillary to the underlying claim,

without which a plaintiff cannot have suffered injury by being shut out of court"). See,

Thorpe v. Little, 804 F.Supp.2d 174, 182 (D.C. Del. 2011).

5.  Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants have

judially legislative enacted Okla.Sup.Ct.R. 1.36(g), execute, administer, and enforce the

complained of state court rule of procedure and practice within this District.

PLAINTIFF

6. Plaintiff Paul Anthony Hatton is citizens of the State of Oklahoma residing within

the boundaries of this Court.  Hatton is involved in an appeal before the Oklahoma

Supreme Court and the Court of Civil Appeals of the State of Oklahoma, the Hatton

appeal and that appeal is being conducted under Okla.Sup.Ct.R. 1.36(g) and is not

-35-

concluded.  In the <u>Hatton</u> appeal the Hatton are being denied their right file a highly

forensic appellate opening brief or brief-in-chief in that appeal under Okla.Sup.Ct.R.

1.36(g).[30] The Hatton have constitutional standing because they are individuals who have

been injured at the hands of the Defendants acting in their official capacity under color of

state law through their constitutional violations, and those constitutional injuries

substantially effects the Plaintiff in a personal and individual way giving rise to prospective

injunctive and declaratory relief to plaintiff under 42 U.S.C. § 1983, <u>Arizona Christian</u>

<u>School Tuition Org. v. Winn</u>, 563 U.S. 125, 131 S.Ct. 1440, 1442 ( 2011) (citing <u>Lujan v.</u>

<u>Defenders of Wildlife</u>, 504 U.S. personnel (1992)), and that constitutional injury is not

simply the generalized interest of all citizens in constitutional governance. Id. 1442

(quoting <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 217 (1974)).

DEFENDANTS

7.  Defendants Justices of the Oklahoma Supreme Court and Judges of the Court

of Civil Appeals of the State of Oklahoma are appellate judicial officers of the State of

Oklahoma.  The Justices of the Oklahoma Supreme Court in their official capacity and

under color of state law are responsible for legislatively adopting, implementing and

---

[30] Under a civil appeal is afforded, the State must not so structure it as to arbitrarily
deny to some persons the right or privilege available to others. <u>Lindsey v. Normet</u>, 405 U.S.,
at 74–79 (conditioning appeal in eviction action upon tenant posting bond, with two sureties,
in twice the amount of rent expected to accrue pending appeal, is invalid when no similar
provision is applied to other cases). Cf. <u>Bankers Life & Casualty Co. v. Crenshaw,</u> 486 U.S.
71 (1988) (assessment of 15% penalty on party who unsuccessfully appeals from money
judgment meets rational basis test under equal protection challenge, since it applies to
plaintiffs and defendants alike and does not single out one class of appellants).

enforcing appellate court system wide Okla.Sup.Ct.R. 1.36(g) the customs, practices, and policies complained of in this action.  Specifically, the Justices of the Oklahoma Supreme Court more or less one day after the appeal was filed acting under color of state law violated the Hatton's free speech, right to petition, equal protection and due process rights and interests when they *sua sponte* designated the <u>Hatton</u> appeal as an Okla.Sup.Ct.R.1.36(g) summary appeal depriving, prohibiting and denying them as appellants the right to file a highly forensic appellate brief.  And Judges of the Court of Civil Appeals of the State of Oklahoma acting under color of state law, presently, violate the Hatton' equal protection and due process rights and interests that appeal is not decided and is not  considering arguments set forth in a highly forensic appellate brief prepared under Rule 1.ll(1)(e).  The Justices of the Oklahoma Supreme Court and Judges of the Court of Civil Appeals of the State of Oklahoma are being sued, only, in their official capacities.

### 8. U.S. CONSTITUTIONAL PROVISIONS

Article I, War Power

Section 8
11: To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water

Article IV Privileges and Immunities Clause, provides:

Section 1
Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Section 2

. . . .

1: The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

Article VI, Supremacy Clause

Section 2

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The First Amendment, provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The Fourteenth Amendment, Section 1 of the U.S. Const., provides:

No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without **due process of law**; nor deny to any person within its jurisdiction the **equal protection** of the laws.

## STATEMENT OF CLAIM

9.  The Civil Rights Act, 42 U.S.C. § 1983 allows the Hatton to sue the Justices of the Oklahoma Supreme Court and Judges of the Court of Civil Appeals of the State of Oklahoma, who are state and local officials who under color of state law have violated the Hatton's U.S. constitutional or statutory rights by prohibiting and depriving them of their exercise and protection of their constitutional rights and interests under Rule 1.36 from

filing an appellate merits brief in their pending Oklahoma appeal. Levites v. Bradshaw, 512 U.S. 107, 132 (1994) (affirming that it is 42 U.S.C. § 1983 that provides a federal cause of action for the deprivation of rights secured by the United States Constitution); Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) (explaining that 42 U.S.C. § 1983 was enacted to create a private cause of action for violations of the United States Constitution).

10.  All parties to state district court proceedings have as a matter of right one appeal. 12 Okla. Stat., § 990A; Russell v. Galt, 1921 OK 309, ¶ 1, 200 P. 853.

11.  The definition of an appeal is: "In law, an appeal is the process in which cases are reviewed, where parties request a formal change to an official decision.  Appeals function both as a process for error correction as well as a process of clarifying and interpreting law."[31]  In the Eighteenth century, William Blackstone observed in his Commentaries on the Laws of England that appeals existed as a form of error correction in the common law during the reign of Edward III of England. Blackstone's Commentaries on the Laws of England, the Third - Chapter the Twenty-Fifth: Of Proceedings, In the Nature of Appeals, 1.

12.  The appellate brief is the rigidly structured formal forensic written document that is prepared and submitted to the reviewing court where the appealing party seeks

---

[31] Jonathan Mallamud, Prospective Limitation and the Rights of the Accused, 56 Iowa L.Rev. 321, 359 (1970) ("the power of the courts to contribute to the growth of the law in keeping with the demands of society"); Realist Jurisprudence & Prospective Overruling, 109 U. Pa. L. Rev. 1, 6 (1960) (discussing appeals as "a deliberate and conscious technique of judicial lawmaking").

inform it of the specific material facts, argue the applicable legal issues involved, and earnestly urge and attempt to persuade that the law as it is to be applied to the specific facts based in the appellate record as to why that appellate court should correct the designated alleged errors and/or omissions that were allegedly committed in during the course of the trial court proceedings as mandatorily required in Okla.Sup.Ct.R. 1.11(e)(1). The appellate merit brief is where the appealing party seeks to specifically identify and argue the legal merits of issues of errors arising in the trial court.  The parties' briefs are to endeavor to persuade the appellate court to review the preserved facts, not moot, waived, nor abandoned that are framed and presented by the parties, corroborated in the appellate record and  consider those facts as applied to controlling case law.  To consider those facts and applicable law to determine whether or not  the trial court had made errors and/or omissions in its proceedings or orders. After a complete review of the issues raised and address in the parties' briefs, considering the facts framed by the parties' briefs' and verified in the record, apply the law to those facts, consider, to apply the existing constitutional, statutory and case law and enter a final decision for the parties.  The merits appellate brief is mandatorily required in all other federal, state, and common law appellate proceedings.  Only, Oklahoma has Rule 1.36 summary appellate proceedings based solely on the appellate court's review of the record.

13.  The Supreme Court of the State of Oklahoma has two separate and distinct classes of appeal paths for the conducting and disposing of its civil appeals.  Whether any procedural protections are due depends upon an analysis which of "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."Morrissey v. Brewer, 408 U.S. 471, 481 (1982).  **The**

**traditional appeal track** and classes of appeals are conducted under Okla.Sup.Ct.R. 1.11(e)(1):

> (1) Appellate Briefs. The brief of the moving party shall contain a Summary of the Record, setting forth the material parts of the pleadings, proceedings, facts and documents upon which the party relies, together with such other statements from the record as are necessary to a full understanding of the questions presented to this Court for decision. Facts stated in the Summary of the Record must be supported by citation to the record where such facts occur. Citations to the record shall identify the number of the document in the record, and the page number within the document. Example: ROA, Doc.1, p.5. If the answering party shall contend that such Summary of the Record is incorrect or incomplete, that party's brief shall contain a Summary of the Record correcting any such inaccuracies with citation to the record.
>
> Where a party complains of the admission or rejection of testimony, that party shall set out the testimony to the admission or rejection of which the party complains, stating specifically the objections thereto. Where a party complains of an instruction given or refused, the party shall cite to the place in the record on appeal where said instruction may be found, together with the objection thereto.
>
> When a party desires to set out instructions or requested instructions, or if it is necessary to set out admitted or rejected testimony, the party may set forth such material in either the Summary of the Record in the brief or in an appendix to the brief as described in Rule 1.11(i). A party need not include in the Summary of the Record all of the evidence in support of a claim that the record does not show or tend to show a certain fact, but when such a question is presented, the adverse party shall include in that party's brief or appendix so much of the evidence claimed to have had that effect.
>
> The Summary of the Record need include only a general statement of the substance of those parts of the record over which there is no controversy and which are not required to be shown in detail in order to present the issues to this Court, and such parts of the record as are purely formal and immaterial to the consideration of any issue presented to this Court may be omitted therefrom.

14. The Oklahoma appellate advocate in traditional, historic, and common law is to within thirty days after the trial court's entry of a trial court appealable order[32] is mandatorily required to perform the traditional advocate function[33] of paying the filing fee, filing the with Clerk of the Oklahoma Supreme Court a petition in error[34] of an appealable order of the trial court[35] designation of record or counter-designation of record.[36] Within sixty-days thereafter the appellant's advocate is mandatorily required to prepare and to file a Brief-in-Chief with the office of the Clerk of the Oklahoma Supreme Court.[37]

15. Under Okla.Sup.Ct.R. 1.11(e)(1) the Hatton have a due process protect property right and interest to file an appellate brief in the <u>Hatton</u> appeal to which due process protection of the law and equal protection of the law attaches and is applicable under § 1983. The appellate brief is a highly structured forensic legal argument setting forth the reasons that the trial court below had committed err(s) or omission(s) in the conduct of its

---

[32] 12 Okla. Stat., §§ 681 and 696.3 if the final order is prepared by the parties in form and submitted to the trial court, or 12 § Section 696.2 if order prepared by trial court.  For examples of judgments and final orders, see Okla.Sup.Ct.R. 1.20.

[33]  12 Okla. Stat., § 990A.

[34] Okla.Sup.Ct.R.1.23(a)(1) file an original petition with fourteen (14) copies.  Counter-petitions in error must be filed within forty days after the date of an appealable order.  Okla.Sup.Ct.R. 1.27(a).

[35] The form requirements are set forth in 12 Okla. Stat., § 696.3. An order prepared in compliance with § 696.3 is a jurisdictional prerequisite to the commencement of a civil appeal.  Okla.Sup.Ct.R. 1.27(a).

[36]  Okla.Sup.Ct.R. 1.28(a) & 1.28(c).  Designation of record must be filed both in the office of the trial court clerk and Oklahoma Supreme Court Clerk.

[37] Okla.Sup.Ct.R. 1.10(a)(1).

proceedings or orders for which the appellant, Hatton, specifically have identified, ague the law. and they seek the appellate court to correct, clarify, and succinctly to state the law or give other specific relief.

16.   It is the function of the appellant advocate to prepare and timely file the highly structured forensic legal argument: Brief-in-Chief or the opening brief in the mandatorily specified form and having the required contents.[38] The Brief-in-chief or opening brief is mandatorily required to be of a certain specific size, format, font size, and page numbering[39], size[40], cover[41], index[42], Summary of the Record[43], separate propositions[44],

---

[38]   Okla.Sup.Ct.R.1.11.

[39]   Okla.Sup.Ct.R. 1.11(a).

[40]   Okla.Sup.Ct.R. 1.11(b).

[41]   Okla.Sup.Ct.R. 1.1l(c).

[42]   Okla.Sup.Ct.R. 1.1l(d).

[43]   For the actual judicial application or usage of the opening brief's statement of the case contained in the brief-in-chief or opening briefs, see McHodge v. Tulsa St. Ry. Co., 1923 OK 637, ¶ 10, 219 P. 656(Okla. 1923) "This brief summary of the record presents counsel's precise grounds for reversal as nearly as we are able to state them."); Phillips v. Mitchell, 1922 OK 135, ¶ 2, 207 P. 559 (Okl. 1922)("From this brief summary of the record it becomes fairly obvious that the only question necessary for us to consider in passing upon the first assignment of error is: Are the findings and judgment of the trial court against F. O. Phillips and in favor of the Mitchells contrary to the clear weight of the evidence? Upon this point it is sufficient to say that we have examined the evidence carefully, and are convinced that the judgment of the trial court is amply sustained by the evidence."); Petitt v. Double-O Oil Co., 1921 OK 179, ¶3, 198 P. 616 (Okla. 1921)("A brief summary of the record discloses that Millie Petitt, nee Stephens, attained her majority on September 4, 1912, and on September 28, 1912, conveyed her allotment to her mother, Ella Hadley, to be held by her mother in trust, as she and her mother testified, to be relieved from annoyance from parties seeking to cheat her out of her land."). See, also, "Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record." State ex rel. Macy v. Board of County Commissioners, 1999 OK 53 ¶ 4 n.8, 986 P.2d 1130, 1134 (see collected cases).

[44]   Okla.Sup.Ct.R. 1.11(f).

signature of counsel[45], certificate of service[46], appendix to brief[47], citations to record[48], authority[49], and citations to authority[50].  Should the Brief-in-Chief that is submitted to the state appellate court fail to substantially conform to the mandatory requirements of the appellate court's rules "the Court may continue or dismiss a cause, reverse or affirm the judgment appealed, render judgment, strike a filing, assess costs or take any other action it deems proper."[51]

17.  The Oklahoma Supreme Court may under Okla.Sup.Ct.R 1.7(III) at its sole discretion *sua sponte* place certain appeals on a fast track docket where "they are assigned for disposition by the fast track docket method may be placed on that docket and decided promptly by a short memorandum order with no party having a right to recall or to have that appeal to be reassigned from that docket.  "The advanced case may be set for oral presentation with or without any record or briefs." Id.  This Rule is not at issue here.

---

[45] Okla.Sup.Ct.R. 1.11(g).

[46] Okla.Sup.Ct.R. 1.11(h).

[47] Okla.Sup.Ct.R. 1.11(i).

[48] Okla.Sup.Ct.R. 1.11(j).

[49] Okla.Sup.Ct.R. 1.11(k).

[50] Okla.Sup.Ct.R. 1.11(l).

[51] Okla.Sup.Ct.R. 1.2, Title 12 Okla. Stat., § 995 and Title 20 Okla. Stat,. § 15.1. Compare for inconsistency in application with Rule 1.36(g) with the, alternative, application of Okla.Sup.Ct.R. 1.11(i). see, Patzkowsky v. State ex rel. Oklahoma Board of Agriculture, 2009 OK CIV APP 18, ¶ 3, 217 P.3d 146, 147 (Okla) ("Consistent with th[e Okla.Sup.Ct. R. 1.11(e)(1)] requirement, we are not required to search the multiple volumes of this record to find where those "facts" were demonstrated in the evidence.  Under such circumstances an appellate court is justified in ignoring assignments of error dependent upon those "facts." Peters v. Wallace, 1927 OK 279, 260 P. 42.").

18.  Contrary, to Fed.R.Civ.P. 12(b)(6) in the Hatton's have stated his §1983 claim against these Defendants for which this Court can grant prospective injunctive and declaratory relief and judgment to Plaintiff, as follows: the Hatton have an individual constitutionally protected property right under Oklahoma common law,[52] historic custom and usage and, Fourteenth Amendment due process protected and secured property right and interest to file an appellate merits brief under Okla.Sup.Ct.R. 1.11(e)(1) in the state Hatton appeal.[53]  Rule 1.35 deprivation, prohibition and real and ongoing threat against his right to file an appellate merits brief is Defendants' denial of Plaintiff access to the state appellate courts that is their fundamental First Amendment Free Speech right.  Acting under color of state law the Defendants, state officials by their course of conduct as a person or persons have proximately caused Plaintiff to be deprived of their constitutionally protected property right and interest to file an appellate merits brief under Okla.Sup.Ct.R. 1.11(e)(1) when with they sua sponte ordered this proceeding to be conducted under Okla.Sup.Ct.R. 1.36(g) depriving and prohibiting them from filing an appellate merits brief, and, thereafter, throughout the putative appeal under Okla.Sup.Ct.R. 1.36(g), deprives and prohibits the Hatton from exercising his right to file an appellate brief to

---

[52] Silver v. Slusher, 1988 OK 53, ¶ 10, 770 P.2d 878, 883.(" There are three separate sources which give rise to the **creation of rights** under Oklahoma law: the state constitution, her statutes and her common law.")(footnote omitted).

[53] "Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). Or, more simply, courts have required plaintiff to "plead that (1) the defendants acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986); see also Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); WMX Techs., Inc. v. Miller, 197 F.3d 367, 372 (9th Cir. 1999) (en banc); Ortez v. Washington County, Or., 88 F.3d 804, 810 (9th Cir. 1996).

overcome the presumption of correctness of the trial court proceedings and to advance and advocate their claims of trial court error or omissions through his filing an **Okla.Sup.Ct.R. 1.11(e)(1)** appellate brief in the <u>Hatton</u> appeal.   The enforcing of the deprivation, prohibition and real and ongoing threat of enforcement under Okla.Sup.Ct.R. 1.36(g) against his filing an appellate merits brief is violation of his Oklahoma common law, historic custom and usage and, Fourteenth Amendment due process the right to file his appellate merits brief in the <u>Hatton'</u> appeal.   Consequently, under color of state law these Defendants have denied the Hatton their secured and protected due process property right and interest under Okla.Sup.Ct.R. 1.11(e)(1) to prepare and file an appellate merits brief in his appeal in the <u>Hatton</u> appeal as their effort to induce and persuade the appellate court to correct trial court errors for the appellate court correction as well as a process of clarifying and interpreting law.  Thus, the Defendants' acting under color of state law have irrefutably deprived, denied and prohibited them of their due process right to file an appellate brief under Okla.Sup.Ct.R. 1.11(e)(1) in the <u>Hatton</u> appeal for which this Court can grant Plaintiff prospective injunctive, declaratory and other relief under § 1983 against these Defendants.

19.     Also, the two-step inquiry establishes that Plaintiff have contrary to Fed.R.Civ.P. 12(b)(6) plead a plausible Fourteenth Amendment procedural due process violation in stating his §1983 claims[54] against these Defendants for which this Court can grant prospective injunctive and declaratory relief and judgment to Plaintiff, as follows: (a)

---

[54] A two-step inquiry determines that the Hatton have has stated a § 1983 claim: "(1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" <u>Camuglia v. City of Albuquerque</u>, 448 F.3d 1214, 1219 (10th Cir. 2006) (internal quotations omitted)

Under Okla.Sup.Ct.R. 1.11(e)(1) the Hatton have a secured and protected due process protect property right and interest to file an appellate brief in the <u>Hatton</u> appeal to which due process protection is applicable under § 1983. Beginning the date of the order after Plaintiff filing the Hatton appeal assigning to the Okla.Sup.Ct.R. 1.36(g) summary appeal docket the persons of the Defendants deprived and prohibited the Hatton from exercising their due process protected property right and interest to file an appellate brief in the <u>Hatton</u> appeal. Thereafter during that putative appeal Defendants as persons have acted under color of state law to deprive, deny and prohibit the Hatton from exercising his constitutionally protected due process right to file an appellate brief which was and is their protected due process property right and interest under Okla.Sup.Ct.R. 1.11(e)(1). Thus, the Defendants as persons acting under color of state law have irrefutably deprived, denied and prohibited them of their exercise of their constitutionally protected due process right to file an appellate brief under Okla.Sup.Ct.R. 1.11(e)(1) in the <u>Hatton</u> appeal for which this Court can grant Plaintiff prospective injunctive, declaratory and other relief under § 1983.

20. Without prior court authorization there is a completely arbitrary and capricious method unique to Oklahoma and an alternative appellate procedure and class of appellants is provided the appealing parties under the **second appeal track** for accelerated procedure or the summary appellate process under Okla.Sup.Ct.R. 1.36(g).

Okla.Sup.Ct.R. 1.36(g). Appellate Review and Briefs.

> "The appellate court shall confine its review to the record actually presented to the trial court. **Unless otherwise ordered by the appellate court, no briefs will be allowed on review**. If briefs are ordered, the appellate court will prescribe a briefing schedule. Motions for leave to submit appellate briefs shall be deemed denied unless affirmatively granted by the court. No

briefs shall be tendered by attachment to a motion for leave to brief, and the clerk shall not accept or file an appellate brief without prior leave of the court. A motion for appeal related attorney's fees must be made by motion prior to mandate. See Rule 1.14."

21.     Contrary to the common law 12 O.S. § 2[55], the Hatton have been deprived and prohibited and barred from mounting a zealous appellate attack through filing an appellate merits brief or to otherwise question the trial court's judgment or final order.  Or, under Okla.Sup.Ct.R. 1.36(g) the merits of the trial court's judgment is presumed absolutely to be correct.  The state appellant is implacably and ruthlessly deprived and prohibited[56] from filing a Brief-in-chief thus denying him due process of law through not having a reasonable opportunity to present his appellate claims or defenses.  Appellants are implacably and ruthlessly deprived, and prohibited from preparing and filing a Brief-in-chief, or any brief and he cannot advocate any of the appellant's issues on appeal through his preparing any document.   Neither any document with a specific size, format, font size, and page numbering, size, cover, index, Summary of the Record, separate propositions, the

---

[55] Silver v. Slusher, 1988 OK 53, ¶ 10, 770 P.2d 878, 883.(" There are three separate sources which give rise to the creation of rights under Oklahoma law: the state constitution, her statutes and her common law.")(footnote omitted).

[56] Under the rules for accelerated summary judgment appeal, no briefing shall be allowed unless ordered by the appellate court. Okla. Sup. Ct. R. 1.36(g). Instead, "'[a]n appellate court shall confine its review to the record actually presented to the trial court.' Id. It is evident, therefore, that a party shall not include new arguments or authorities--which would have the effect of briefing the issues--in her Petition in Error. When a party attempts to circumvent this rule, appellate courts are to strike those parts of the petition that exceed the scope allowed by Rule 1.36(g). See, e.g., Simington v. Parker, 2011 OK CIV APP 28, ¶ 6, 250 P.3d 351, 353-54" O'Feery v. Smith, 2001 OK CIV APP 142, ¶ 3, 38 P.3d 242, 244"; Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.  Plainly, Rule 1.36 "as applied" is strictly enforced to fully prohibit and prevents appellants Hatton their exercise of his Fourteenth Amendment Due Process right to file an appellate brief. This, plainly, is Rule 1.36(g) is bias and prejudice and, too, is expressly a structural error as bias and prejudice. Arizona v. Fulminante, 499 U.S., at 310.

signature of counsel, the certificate of service, the appendix to brief, citations to record,

authority, nor citations to authority or to otherwise to frame the factual nor the legal issues

and arguments for the appellate courts of Oklahoma review, weigh, consider and dispose.

Should an appellant attempt to file a brief, the appellate court will order such brief stricken

from the docket. Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

22.   Rather, and in contrast and comparison with traditional appeals under the expedited

summary process under Okla.Sup.Ct.R.1.36(g) after the appellant's petition in error

having an appealable order or judgment and the designation of record is filed the Oklahoma

Supreme Court through a *sua sponte* order directed the parties to "proceed as an

accelerated appeal pursuant to rule 1.36 of the Okla.Sup.Ct.Rules." Thereafter, the Hatton

have been barred from advocating the appeal through the filing of a highly forensic legal

argument in an appellate brief in denial of due process of law.[57]

23.   The Hatton's attorney could not advocate in their appeal.  Their attorney only had to

proceed in that appeal as the substituted judicial administrative functionary and he

performs the duties traditional to the office of the clerk of the trial court.  The appellant

must physically travel to the office of the trial court clerk, obtain and pay for each and

every complete certified copy of each and all of the designated trial court filings.[58]  After

---

[57] In a liberty interest case and then in a property interest case, the Court has
squarely held that because "'minimum [procedural] requirements [are] a matter of federal
law, they are not diminished by the fact that the State may have specified its own procedures
that it may deem adequate for determining the preconditions to adverse action.' . . . Indeed,
any other conclusion would allow the State to destroy at will virtually any state-created
property interest."Logan v. Zimmerman Brush Co., 455 U.S. 422, 432 (1982) (quoting Vitek
v. Jones, 445 U.S. 480, 491 (1980)).

[58] Okla.Sup.Ct.R.1.36(g).

obtaining copies of trial court documents the appellant must assemble the physical record of the documents on appeal, place each in chronological order as reflected in the trial court docket for the case appealed. Each filing must be separated by a tabbed sheet to assist in locating each filing. An index must be prepared by appellant for each volume of the appellate record identifying each document, including the appearance docket and once assembled the office of the clerk of the trial court must be submitted to the office of the clerk of the trial court for their inspection and review of the original of the appellant's compilation, index, and covers of the documents for that office's certification. The appellant must include that trial court clerk's certification in the first volume of the record, bind the original, four copies for the Supreme Court, and the copies for the appellant's and appellee's record on appeal. They must transmit the original and four copies of the record on appeal to the office of the clerk of the Oklahoma Supreme Court. Also, opposing party's counsel must be transmitted a copy.

24. The appellant's advocate cannot do anything further after filing and transmitting the record on appeal. Rather, under Okla.Sup.Ct.R.1.36(b) summary appellate proceedings she is, totally, implacably and ruthlessly deprived, prohibited from performing any appellate advocate function, i.e., framing the set of facts unique for the Court to address on appeal, and arguing the appeal in any fashion. Appellants, the Hatton, are totally foreclosed and barred from filing a brief and motions for leave to file an appellate brief is presumed to be denied. In all Okla.Sup.Ct.R. 1.36(g) appeals, the Oklahoma appellate court Justices or judges are the complete substitute advocate putatively for the all the parties. A State may not, consistent with the due process clause, enforce a judgment against a party named in the proceeding without having given him an opportunity

to be heard, i.e., file an appellate brief in appellate proceedings sometime before final judgment is entered. Postal Telegraph Cable Co. v. Newport, 247 U.S. 464, 476 (1918); Baker v. Baker, Eccles & Co., 242 U.S. 294, 403 (1917); Louisville & Nashville R.R. v. Schmidt, 177 U.S. 230, 236 (1900). Where there is no opportunity to present evidence or proffer arguments, i.e., file a merits brief in an appellate court due process has been denied. Saunders v. Shaw, 244 U.S. 317 (1917). At all times the appellant's advocate is deprived, implacably and ruthlessly prohibited from actually perform any advocacy function whatsoever, until after the Oklahoma appellate court has handed down its decision. Only, after the entry of the January 20, 2017 opinion, then and only then may the appellant's attorney may first file a brief in his motion to reconsider. After being assigned to the Okla.Sup.Ct.R. 1.36(g) summary proceeding disposition docket, the appellant's advocate is tied and bound until after the appellate court's opinion is rendered. Under Okla.Sup.Ct.R. 1.36(g) appellant advocates are implacably and ruthlessly denied, deprived and prohibited from filing a Brief-in-Chief or opening brief on the merits of the appeal thus denying the Hatton their due process of law.

25.   Under Fourteenth Amendment equal protection of the law any party who is subject to any judicial proceeding has the fundamental right to raise, advocate all of their claims and defenses. Saunders v. Shaw, 244 U.S. 317 (1917). Okla.Sup.Ct.R. 1.36(g) appellate proceedings deny the Hatton their fundamental right to raise, advocate all of their claims and defenses. In Logan v. Zimmerman Brush Co.,[59] the Court had distinguished

---

[59] 455 U.S. 422, 435–36 (1982). The Court also emphasized that a post-deprivation hearing in the context of this case would be inadequate. "That is particularly true where, as here, the State's only post-termination process comes in the form of an independent tort action. Seeking redress through a tort suit is apt to be a lengthy and speculative process,

between property deprivations resulting from random and unauthorized acts of state employees and those resulting from operation of established state procedures, and presumably this distinction still holds.   Post deprivation procedures, i.e., motion to reconsider, or a discretionary certiorari petition would not satisfy due process deprivations if it is "the state system itself that destroys a complainant's property interest." The state itself under Okla.Sup.Ct.R. 1.36(g) proceedings destroyed and denied the Hatton of their fundamental right to raise, advocate all of his claims and defenses.   "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." Mathews v. Eldridge, 424 U.S. 319, 344 (1976). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Fuentes v. Shevin, 407 U.S. 67, 81 (1972).   The Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. Carey v. Piphus, 435 U.S. 247, 266–67 (1978); Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980).

(a) Due Process Hearing Requirements. Okla.Sup.Ct.R. 1.36(g) appellate proceedings denied and barred the Hatton of the right to be heard. "[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).   "Parties whose rights are to be affected are entitled to be heard." Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863). "The constitutional right to be heard is a basic aspect of the duty of government to follow a fair

---

which in a situation such as this one will never make the complainant entirely whole." Id. at 436–37.

process of decision making when it acts to deprive a person of his possessions.  The purpose of this requirement is not only to ensure abstract fair play to the individual.  Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment. . . ." Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863).   The notice of hearing and the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."Armstrong v. Manzo, 380 U.S. 545, 552 (1965). The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment. . . ." Fuentes v. Shevin, 407 U.S. 67, 80–81 (1972). See Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 170–71 (1951) (Justice Frankfurter concurring). Too, the nature of what must be shown will be taken into account.

(b) Rule 1.36 is Defendants' denial under color of state law of Plaintiff's Fourteenth Amendment Due Process Right to Counsel or Advocate. Okla.Sup.Ct.R. 1.36(g) appellate proceedings denied the Hatton of their right to counsel. In Goldberg v. Kelly, 397 U.S. 254, 270–71 (1970) the Court held that a judicial body must permit an attorney or advocate to be present and to appear in proceedings.   In the Pending appellate proceeding the Defendants did not permit the Hatton to be present and to appear in that proceeding through his filing of an appellate merits brief.  A hearing of that appeal is dependent upon the personal appearance through the filing of an appellate brief for the claimant. Goldberg v. Kelly, 397 U.S. 254 (1970).

(b) **Counsel.** In Goldberg v. Kelly, 397 U.S. 254 (1970) the Court held that an agency conducting a judicial proceeding to determine property rights and interests it must permit the principal party the right to be represented by and to be assisted by counsel.

Without filing an appellate brief the Hatton cannot under Okla.Sup.Ct.R. 1.36(g) file a brief and is denied the assistance of an advocate or counsel.

26. Denial Equal Access to Justice. Okla.Sup.Ct.R. 1.36(g) appellate proceedings denied the Hatton' right to equal access to justice compared with appellate proceeding conducted under Okla.Sup.Ct.R. 1.11. At the hands of the Justices and Judges of the Oklahoma appellate courts acting under color of state court rule under Okla.Sup.Ct.R. 1.36(g) barred, deprived, and prohibited the Hatton from having his equal access to the Oklahoma appellate courts from advocating all the appellate fact and legal issues in his appeal and bars him at any cost from filing a Sup.Ct.R. 1.11 brief-in-chief to fully advocate his fact and legal issues in an effort to persuade the court to correct its errors. Griffin v. Illinois, 351 U.S. 12, 18–20 (1956) (using equal protection "rights" analysis to protect the right of individuals to access the courts). See also, Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097, 2114 (1995) (noting "the long line of cases understanding equal protection as a personal right").

27.    Without filing an appellate brief containing a highly structured forensic argument of the issues of trial court error or omissions on review the Hatton cannot overcome the appellate court's presumption of correctness of the appealed trial court's proceedings and orders. And through the appellate brief seek to argue for correction in the appellate court as well as the process of clarifying and interpreting law. In all Oklahoma appellate proceedings the Oklahoma appellant has a duty and must affirmatively demonstrate to the Oklahoma appellate courts the trial court's errors "and noting that the appellant seeking to overturn a decision bears the burden of "overcoming the law's presumption of correctness". Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 16, n. 34, 396 P.3d 210;  Willis v. Sequoyah House, Inc., 2008 OK 87, ¶ 15, 194 P.3d 1285, 1290 ("A trial judge's decision

comes to a court of review clothed with a presumption of correctness"); F.D.I.C. v. Jernigan, 1995 OK 54, ¶ 8 n.13, 901 P.2d 793, 796 n.13 ("On appeal we indulge in the presumption that a trial court's decision is correct and the proceedings are regular."); Boorigie v. Boyd, 1914 OK 77, ¶ 2, 139 P. 253, 253-54 ("We must presume, in the absence of a contrary showing, that the court's proceedings were regular."); Kahre v. Kahre, 1995 OK 133, ¶ 45, 916 P.2d 1355, 1365 ("Before any claimed error concerning the admission or exclusion of evidence will be deemed reversible error, an affirmative showing of prejudicial error must be made."); Eckel v. Adair, Okl., 698 P.2d 921, 924 (1985); see also Wilson-Harris v. Southwest Telephone Co., 193 Okl. 194, 141 P.2d 986, 989-990 (1943). Therefore, under Oklahoma controlling case law all appellants are required to file an appellant merits brief to overcome the presumption of correctness of trial court proceedings and order, and to identify, argue and to demonstrate to the appellate court of the errors of fact and law of the proceedings and orders in the trial court and to seek appellate court error correction as well as a process of clarifying and interpreting law. Proceedings, under Okla.Sup.Ct.R. 1.36(g) the trial court proceedings are presumed to be correct and the Oklahoma appellate without appellate having merits briefs Okla.Sup.Ct.R. 1.11(e) to review and consider, the Hatton are denied an appellate hearing and they cannot identify issues, argue and seek Defendants' to make correction of trial court errors as well as the process of clarifying and interpreting law in their disposition of the appellate case. Consequently, Oklahoma naturally appellate courts reach the predetermined outcome in state court appeals for the appellees that the presumed trial court proceedings are correct.

28.  Under controlling applicable Oklahoma case law, Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 16, n. 34' 396 P.3d 210, appellate proceedings conducted under the Okla.Sup.Ct.R.

1.36(g) summary appeals are predetermined because the trial court proceedings are presumed to be correct.  Because the Hatton and all similarity situated appellants are deprived, and prohibited from the filing an Okla.Sup.Ct.R. 1.11(e) brief-in-chief, they cannot demonstrate to the Oklahoma appellate courts the errors in trial court's proceedings "and noting that the appellant [cannot seek] to overturn a decision [and he/they cannot bear] the burden of "overcoming the law's presumption of correctness".  Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 16, n. 34, 396 P.3d 210.  Acting under color of state law the Justices of the Oklahoma Supreme Court have under Okla.Sup.Ct.R. 1.36(g) summary appeals implemented appellate proceedings which are sham appellate proceeding because without an appellate brief there is no appellate hearing. Cf. Andrew v. Depani-Sparkes, 2017 OK 42, ¶ 16, n. 34, 396 P.3d 210.  Acting under color of state law the Justices and Judges of the Oklahoma appellate courts in Sup.Ct.R. 1.36(g) summary appeals proceedings have an affirmative duty, obligation and interest to dispense justice even handedly, detached, and impartial appellate review of trial court proceedings.  Those appellate duties, obligations, and interests directly irreconcilably are in direct conflict with their presumption of the correctness of appealed trial court proceedings. F.D.I.C. v. Jernigan, 1995 OK 54, ¶ 8 n.13, 901 P.2d 793, 796 n.13.  That presumption of correctness of the trial court proceedings and orders cannot be changed without the appellate courts being persuaded through an appellate advocate filing an appellate brief addressing the errors of the trial court to persuade the Justices and Judges of Oklahoma appellate courts of those errors.

29.    An Oklahoma Sup.Ct.R. 1.36(g) summary appellate proceeding defeats the error-correction function of Oklahoma appellate review and does not protect appellants

from being wrongfully deprived of property without due process of law. The Hatton as Rule 1.36(g) summary appeals appellants cannot file an Okla.Sup.Ct.R. 1.11(e) appellate brief and advocate the issues which could have and should have been presented in such a brief. The Oklahoma Justices' and Judges' acting under color of state law denial of the Hatton's and all other appellants' interests in Sup.Ct.R 1.36(g) summary appeals proceedings go to the heart of the Due Process Clause, which by its very terms protects Oklahoma appellants against the deprivation of "property, without due process of law." U.S. CONST. amend. XIV.

30.     Rule 1.36's deprivation, prohibition and real and ongoing threat of enforcement of his right to file an appellate brief is Defendants' denial and deprivation under color of state law of Plaintiff' access to the state appellate courts that is a fundamental First Amendment Free Speech right.[60] The First Amendment protects vigorous advocacy, certainly of lawful ends, against government intrusion. NAACP v. Button, 371 U.S. 415, 429 (1963). The Plaintiff' First Amendment right to justice is far broader than the constitutionally-recognized right to court access.[61] Rule 1.36 deny state appellants their constitutional right to hire a lawyer to speak on their behalf and act as their advocate and advisor in Oklahoma summary appellate proceedings. Powell v. Alabama, 287 U.S. 45, 69

---

[60] United Transp. Union v. State Bar, 401 U.S. 576, 580 (1971) (invalidating an injunction against a union's legal services fee plan); United Mine Workers of Amer. v. Illinois State Bar Ass'n, 389 U.S. 217, 223 (1967) (invalidating an unauthorized-practice injunction against a union's use of a salaried attorney to assist with workmen's compensation claims); Brotherhood of R.R. Trainmen v. Virginia, 377 U.S. 1, 8 (1964) (invalidating an injunction against a union for solicitation and unauthorized practice of law for referring members to personal injury attorneys).

[61] Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) ("Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." (citations omitted)).

(1932) (explaining that it "would be a denial of a hearing, and therefore, of due process" under the Fifth and Fourteenth Amendments to prohibit and deprive litigants from employing attorneys to represent them); see also Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1104 (5th Cir. 1980)(discussing the "constitutional right to retain hired counsel").  The Court also recognized that the "assistance of counsel" is "deemed necessary to insure fundamental human rights of life and liberty" Gideon v. Wainwright, 372 U.S. 335, 343 (1963). In Legal Servs. Corp. v. Velazquez, 531 U.S. 533 (2001)[62], the Court held that attorneys have a First Amendment right to raise relevant and colorable arguments in legal proceedings on behalf of clients. Id., at 545.  Lawyers, therefore, serve an essential role in our justice system by providing individuals with the necessary language and process to invoke or avoid government power, including future liability.  Indeed, by Rule 1.36's forbidding such speech — even though allegedly only a restriction on attorney speech — individuals would, in large part, be unable to invoke the law to protect their life, liberty, and property. Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963).  Consequently, **Rule 1.36 is Defendants' denial of Plaintiff' attorney speech that invokes the protections of existing law is essential to accessing justice and to the fair administration of the laws**. "[E]ven the war power does not remove constitutional limitations safeguarding essential liberties." Home Bldg. & Loan Ass'n. v. Blaisdell, 290 U.S. 398, 426 (1934). Therefore, access to the courts has core Free Speech Clause protection.

---

[62] See Velazquez, 531 U.S. at 545 ("By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power." (emphasis added).

31.     Rule 1.36's deprivation, prohibition and real and ongoing threat of enformcemnt from the Plaintiff's right to file an appellate merits briefs is a deprivation, and denial of all designated appellants' their due process of law right of access to the Oklahoma appellate courts. The Supreme Court has been clear regarding the precise source for the constitutional right to court access. Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) ("Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection, and Due Process Clauses." (citations omitted)).  The Court, also, has recognized such a right arising from the Due Process Clauses for civil rights litigants. NAACP v. Button, 371 U.S. 415, 429-30 (1963) (holding, in the context of activities of the NAACP, that "litigation" is protected by the First Amendment and "may well be the sole practicable avenue open to a minority to petition for redress of grievances").  Moreover, the Due Process Clauses deprives and prohibits the state and federal governments from depriving individuals of life, liberty, or property without due process of law.  Rule 1.36 summary appellate proceedings deprive individuals of life, liberty, and property. The Due Process Clauses, thus, require "a meaningful opportunity to be heard." Boddie v. Connecticut, 401 U.S. 371, 377 (1971). Thus, when under Rule 1.36 appellate proceedings attorneys are deprived and prohibited from raising such arguments, the judiciary cannot fulfill its constitutional function to declare "what the law is." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). Consequently, the Velazquez Court recognized two categories of attorney in-court speech (including written and oral communications to a court) that must be protected: (1) attorneys must be free to "present all the reasonable and well-grounded arguments

necessary for proper resolution of the case" 531 U.S. at 545; and (2) regulators cannot restrict attorney speech in order to "insulate the Government's laws" or government action "from judicial inquiry" and scrutiny. 531 U.S. at 546.

32.    Rule 1.36's deprivation, prohibition, and real and ongoing treat of is enforcement[63] from his filing appellate merits is plainly a denial of the Plaintiff' fundamental human right of First Amendment Free Speech.

33.    Therefore, the court rule the Sup.Ct.R. 1.36(g) summary appeals is subject to strict scrutiny by this Court, particularly because they reach a predetermined outcome in state court. There is no rational relationship between disparity of treatment and there is no legitimate governmental purpose between accelerated appellate proceedings in Okla.Sup.Ct.R. 1.36 deprivating and prohibiting appellate briefs.  On the other hand and wholly in opposite Okla.Sup.Ct.R. 1.11(a) mandatorily requires the filing of a brief-in-chief to advocate the merits of the appeal.  The differential treatment of the Hatton in the Okla.Sup.Ct.R. 1.36(g) summary appeals classification of the accelerated appeals proceedings depriving, and prohibiting the filing of appellate a brief-in-chief is a court legislated practice rule acting under color of state law which has no purpose substantially related any important Oklahoma governmental objective. Clark v. Jeter, 486 U.S. 456, 461 (1988).  The state court self-legislated rule, Okla.Sup.Ct.R. 1.36(g) summary appeals cannot withstand intermediate scrutiny, "a statutory [or legislated court rule] classification must be substantially related to an important governmental objective." Id. The relation to the objective of Sup.Ct.R. 1.36(g) summary appeals must be more than merely

---

[63] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

non-arbitrary or rational – it must be substantial – and the objective itself must be more than merely valid or permissible – it must be important.

34.   The classification of appeals which are conducted Okla.Sup.Ct.R. 1.36(g) summary appeals because the appeals conducted thereunder reach a predetermined outcome in state court it is are not substantially related to any important Oklahoma governmental objective. Clark v. Jeter, 486 U.S. at, 461. Therefore, lacking any important Oklahoma governmental objective the Hatton's pending Oklahoma appeals conducted under Okla.Sup.Ct.R. 1.36(g) summary appeals are null and void no force and effect as having violated the Hatton's Fourteenth equal protection of the law and the proceedings thereunder are likewise null, void and without force and effect. That an unconstitutional Rule 1.36 is to be considered as though it had never been enacted by the Oklahoma Supreme Court. Peña-Rodriguez v. Colorado, 580 U.S. ___ , 137 S. Ct. 855  (2017)(state court legislated rule void); Shapero v. Kentucky Bar Ass'n, 486 U. S. 466 (1988); Bailey v. Alabama, 219 U. S. 219 (1911)(legislated court rule void); Missouri Pacific Ry. v. Larabee, 234 U. S. 459 (1914); Chicago, Indianmpolia & Louisville Ry. v. Hackett, 227 U. S. 559, 566 (1913). See also Louisiana v. Pillsbuny, 15 Otto 287, 26 L. Ed. 1090 (1881), where the court said in the course of an opinion declaring a state statute to be unconstitutional because impairing the obligation of contracts clause,

> "Legislation of a state thus impairing the obligation of contract made under its authority, is null and void; and the courts in enforcing the contracts will pursue the same course and apply the same remedies as though such invalid legislation had never existed. The [state] constitutional provision and statute here in question, are clearly within that category, and are, therefore, void."

<u>Gunn v. Barry</u>, 82 U.S. (15 Wall.) 610, 623-624, 21 L. Ed. 212 (1872).

Where an Oklahoma statute, and the same application for the state court Rule 1.36 found to be unconstitutional, Rule 1.36, therefore, falls and the Defendants are left "standing naked, as individuals clothed with no power emanating from the [court rule], and thus viewed and considered alone as individuals assuming to act under the guise of law where no law exists; … ". <u>Kans. Natural Gas Co. v. Haskell</u>, 172 Fed. 555 (1909), affirmed, 221 U.S. 229 (1911). All proceeding conducted under Rule 1.36 are null, void and have no force and effect.

35.    The state objectives for the discriminatory law of Sup.Ct.R. 1.36(g) summary appeals are, also, subjected to intermediate scrutiny and "must be genuine, not hypothesized or invented *post hoc* in response to litigations" and the justification offered by the state must be "exceedingly persuasive," <u>United States v. Virginia,</u> 518 U.S. 515, 533 (1996). There appears no rational justification for Sup.Ct.R. 1.36(g) summary appeals particularly when they reach a predetermined outcome for the appellees.

36.    Sup.Ct.R. 1.36(g) summary appeals cannot pass either the strict scrutiny test or the intermediate scrutiny test. Under the strict scrutiny test the government must prove that the law, Sup.Ct.R. 1.36(g) summary appeals are narrowly tailored to advance a compelling government interest, particularly, when those appeals reach a predetermined outcome in state court. This means that the classification is no broader than absolutely necessary. The government interest must be compelling enough to warrant the classification. Strict scrutiny applies to Sup.Ct.R. 1.36(g) summary appeals appellate proceedings because that judge self-legislated law burdens the Hatton's and all appellants' right to exercise his/their

"fundamental right" to advocate the fact and legal issues of his Oklahoma appeal. City of Richmond v. J.A. Croson Co., 488 U.S. 469, 493 (1989)(observing that the goal of strict scrutiny is to "smoke out" illicit governmental purposes (internal quotation marks omitted)). Moore v. City of E. Cleveland, 431 U.S. 494, 499 (1977)("[W]hen the government legislation [, Okla.Sup.Ct.R. 1.36(g) summary appeals,] intrudes [on a fundamental right], this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation."); See also, Skinner v. Oklahoma, 316 U.S. 535 (1942)(where fundamental rights are infringed by state legislation, i.e., the judicially self-legislated court rule Okla.Sup.Ct.R. 1.36(g)summary appeals, equal protection requires application of strict scrutiny or a compelling state interest).  Because of the existence of state court rule, Okla.Sup.Ct.R. 1.11(e)(1) to process and hear Oklahoma appeals there is no compelling state interest for appellate proceedings to be conducted by court rule Okla.Sup.Ct.R. 1.36(g)summary appeals specifically because they are skewed to reach a predetermined outcome for the appellees in state court.

37.   In Mathews v. Eldridge, the U.S. Supreme Court adopted a three-factor balancing test for determining "what process is due" the Hatton in Oklahoma appellate proceedings conducted under Sup.Ct.R. 1.36(g) summary appeals. Mathews v. Eldridge, 424 U.S. 319, 333–35 (1976). The Mathews standard requires courts to weigh, the following: (1) "the private interest that will be affected by the official action": What, then, are the private interests protected by the appellate process? The error-correction function of Oklahoma appellate review under Okla.Sup.Ct.R. 1.11(e)(1) protects litigants from being wrongfully deprived of property (in civil litigation) or life and liberty (in criminal litigation) which is

denied the Hatton in their Rule 1.36 appeal.  Because of the presumption of correction of

state trial court proceedings, there is little if any error-correction function available to the

Hatton or other appellants under Okla.Sup.Ct.R. 1.36(g) summary appeals and naturally

reach a predetermined outcome for the appellees in state court.  These interests of the

Hatton go to the heart of the Due Process Clause, which by its very terms protects against

the deprivation of "life, liberty, or property, without due process of law.", and (2) "the risk

of an erroneous deprivation of such interest through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards" against being as follows:

The value of appellate safeguards for preventing such deprivation is likewise significant,

uniquely, when they reach a predetermined outcome for the appellees in state court.

There is little, if any, value for the Justices and Judges of Oklahoma acting under color of

state law to conduct appellate proceedings under Okla.S.Ct.R. 1.36(g) summary appeals

compared with appellate proceedings under Okla.Sup.Ct.R. 1.11(e)(1) because there is

little if any differential in the economic costs to the State of Oklahoma of those proceedings

compared to proceedings conducted under Okla.Sup.Ct.R. 1.11(a).  Moreover, there is no

appellate hearing on the merits of the appeal without an appellate brief for the Oklahoma

appellate judiciary to weigh, consider and address, as shown in paragraphs 20 through 23,

above, there exists under controlling Oklahoma case law the virtual certainty that those

appeals will affirm the trial court's proceedings and disposition because of the presumption

of correctness of the trial court's proceedings they are skewed to reach a predetermined

outcome for the appellees in state court.  Moreover, examining the state nationwide

appellate reversal rates[64] above demonstrates the value of full state court appellate merits briefing protection[65]. Overall, when ruling on the merits, state appellate courts affirmed the trial court verdict in about two-thirds of all cases and reversed or modified the judgment in nearly one-third of the cases[66]. When broken down by type of appellant, however, success rates diverge significantly; forty-two percent of trial court decisions favoring plaintiffs were reversed or modified, as compared to only twenty-one percent of decisions favoring defendants. See Id. at 5.  (3) "[T]he Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.   When weighing the costs of Okla.Sup.Ct.R. 1.36(g) summary appeals proceedings and donning the Rawlsian "veil of ignorance"[67] to determine what procedures an individual would expect if facing either a large civil verdict or the loss of a valuable oil and gas lease and its income, most individuals would likely find the cost of appellate procedure a small one to pay for the protection against erroneous deprivation of property.   There is little difference in the economic costs of appellate proceedings conducted under Okla.Sup.Ct.R. 1.11(a)

---

[64] THOMAS H. COHEN, BUREAU OF JUSTICE STATISTICS, U.S. DEP'T OF JUSTICE, NCJ 212979, APPEALS FROM GENERAL CIVIL TRIALS IN 46 LARGE COUNTIES, 2001–2005, at 2 (2006).

[65] Appellate remedies are able to play a significant jurisprudential role precisely because of the near-universality of appellate rights. In Oklahoma, litigants who lose in the trial court are guaranteed one appeal as of right.

[66] COHEN, supra note 19, at 1

[67] JOHN RAWLS, A THEORY OF JUSTICE 136–42 (1971) (developing the concept of a "veil of ignorance," which asks what societal rules parties would make if they were forced to act without knowledge of whether those rules would prove beneficial or detrimental to them personally).

compared to Sup.Ct.R. 1.36(g) summary appeals. Likely, under Sup.Ct.R. 1.36(g) summary appeals the economic costs are greater because the appellate judicial officers must laboriously comb through the extensive appellate record to address the appellate issues. The real cost of proceedings conducted under Okla. Sup.Ct.R. 1.36(g) summary appeals is the extremely high cost to all the Oklahoma appellate courts' will or have lost the public trust and confidence in that judicial appellate institution of the Oklahoma appellate courts' because of the lacking of fundamental fairness and objectiveness of those accelerated appellate proceedings that are administrated by justices and judges who have skewed their summary appeals reach a predetermined outcome for the appellees. In other words, what is the function of state appellate judges if there is no appellate brief to frame the unique facts, issues and arguments of the parties, because appellate proceedings under Okla.Sup.Ct.R. 1.36(g) summary appeals are near certainty that they will affirm the trial court.

## FOR ALL COUNTS

38.    Paragraph 1 through 37 are realleged and incorporated herein by reference.

39.    A controversy exists as to whether Oklahoma appellate proceedings conducted under Okla.Sup.Ct.R. 1.36(g) summary appeals are unconstitutional under (a) equal access to justice, (b) the strict scrutiny test of the Fourteenth Amendment equal protection clause, (c) the intermediate scrutiny test of the Fourteenth Amendment equal protection clause, (d) the Fourteenth Amendment due process clause, and/or (e) contrary and further declare that contrary to the common law 12 O.S. § 2[68] proceedings under court self-

---

[68] Silver v. Slusher, 1988 OK 53, ¶ 10, 770 P.2d 878, 883.(" There are three separate sources which give rise to the **creation of rights** under Oklahoma law: the state constitution, her statutes and her common law.")(footnote omitted).

legislated rule Okla.Sup.Ct.R. 1.36(g) are strictly construed as being in derogation of common law.[69]

40.   A declaration from this Court would settle this issue.

41.   A declaration from this Court would also serve a useful purpose in clarifying the legal issues in dispute.

42.   Plaintiff seek a declaration that the state court self-legislated rule, Okla.Sup.Ct.R. 1.36(g) summary appeals, is null, void and of no force or effect whatever as being unconstitutional under (a) denying equal access to justice, (b) the strict scrutiny test of the Fourteenth Amendment equal protection clause because of the existence of state court rule, Okla.Sup.Ct.R. 1.11(e)(1) to process and hear Oklahoma appeals there is no compelling state interest for appellate proceedings to be conducted in accordance with court rule Okla.Sup.Ct.R. 1.36(g) summary appeals enough to warrant the unique classification, (c) the intermediate scrutiny test of the Fourteenth Amendment equal protection clause because the State of Oklahoma has no genuine, not hypothesized or invented *post hoc* in response to litigations" and no justification may be offered by the Defendants that is "exceedingly persuasive," United States v. Virginia, 518 U.S. 515, 533 (1996). And, there appears no rational justification for Okla.Sup.Ct.R. 1.36(g) summary appeals proceedings particularly when they are skewed to favor appellees. And/or, (d) thus, deny the Plaintiff' Fourteenth Amendment due process of law.

43.   Plaintiff seek a declaration under § 1983 that all appellate proceedings that have or are being conducted under Okla.Sup.Ct.R. 1.36(g) summary appeals, including the Hatton

---

[69] Fordham and Leach, Interpretation of Statutes in Derogation of the Common Law, 3 VAND. L. REv. 438, 440 (1950); Pound, The Common Law and Legislation, 21 HARv. I. REv. 383, 387 (1908).

appeal are null, void, and of no force or effect whatever because they are unconstitutional under (a) equal access to justice, (b) the strict scrutiny test of the Fourteenth Amendment equal protection clause, (c) the intermediate scrutiny test of the Fourteenth Amendment equal protection clause,  (d) deny appellants their Fourteenth Amendment due process of law. Mathews v. Eldridge, 424 U.S. at, 333–35 and/or (e) contrary. And further declare that Rule 1.36 and proceedings thereon are contrary to the common law 12 O.S. § 2 proceedings under court self-legislated rule Okla.Sup.Ct.R. 1.36(g) are strictly construed as being in derogation of common law.[70]

44.   In the absence of an injunction, proceedings conducted under Okla.Sup.Ct.R. 1.36(g) summary appeals would continue to be enforced[71] and would prevent the Hatton from (a) being denied Equal Access to Justice at the hands of the Defendants and (b) the Hatton's and all appellants' right to exercise their fundamental right to advocate the fact and legal issues of his Oklahoma appeal through filing a merits appellate brief or brief-in-chief in accordance with Okla.Sup.Ct.R. 1.11(e)(1).

45.  Plaintiff continue to suffer irreparable injury at the hands of the Defendants if the Court does not issue an injunction.

46.   There is no adequate remedy at law because only a declaration and injunction, as opposed to monetary damages, would allow the Hatton to have Equal Access to Justice at the hands of the Defendants and (b) the Hatton's and all appellants' have the right to exercise their fundamental right to advocate the fact and legal issues of his Oklahoma

---

[70] Fordham and Leach, Interpretation of Statutes in Derogation of the Common Law, 3 VAND. L. REv. 438, 440 (1950); Pound, The Common Law and Legislation, 21 HARv. I. REv. 383, 387 (1908).

[71] Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 6, 353 P.3d 529, 531.

appeal through filing a merits appellate brief or brief-in-chief in accordance with Okla.Sup.Ct.R. 1.11(e)(1).

47. Enjoining Defendants from enforcing the Oklahoma appellate courts' Okla.Sup.Ct.R. 1.36(g) summary appeal provisions depriving and prohibiting the lawful filing of appellate merits brief or brief-in-chief in accordance with Okla.Sup.Ct.R. 1.11(e)(1) which serves the public interest because the state court Okla.Sup.Ct.R. 1.36(g) rule's provisions violates the Hatton's constitutional rights, specifically, because they are skewed to reach a predetermined outcome for the appellees in state court.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in their favor and against Defendants as follows:

1. Issue a prospective preliminary injunction having a Fed.R.Civ.P. 56(f) notice that the Court may convert the grant of a permanent injunction and a summary judgment (a) enjoining the Defendants, Justices of the Oklahoma Supreme Court and Judges of the Court of Civil Appeals of the State of Oklahoma from enforcing the Oklahoma appellate courts' Okla.Sup.Ct.R. 1.36(g) summary appeals provisions deprive and prohibit the lawful filing of appellate merits brief or brief-in-chief in accordance with Okla.Sup.Ct.R. 1.11(e)(1) which serves the public interest because the state court Okla.Sup.Ct.R. 1.36(g) rule's provision violates the Hatton's constitutional rights, specifically, because that rule is skewed to reach a predetermined outcome for the appellees in state court; (b) enjoining the Defendants from making final decisions or determinations based upon the record on appeal, alone, without their having considered and making determination based upon the preserved issues framed in the brief-in-chief or appeal merits briefs or dispositive motions; (c) enjoining the Defendants are not to overlook or disregard the brief-in-chief or merits

brief and, rather, they are to consider and make their final decision or disposition upon the record alone and the issues to be addressed by the Defendants are to consider and dispose of the issues that are framed substantially on the merits of the preserved issues framed by the merits of the arguments that are set forth and contained in the parties' brief-in-chief or merits appellate brief and

2. Enter the following:

(a) A declaratory judgment for its determination of the offered issues presented herein will have effect in the real world because that the state court self-legislated rule, Okla.Sup.Ct.R. 1.36(g) summary appeals, is null, void, and of no force or effect whatever as being unconstitutional under (a) denying equal access to justice, (b) First Amendment free speech (c) First Amendment right to petition, (d) Fourteenth Amendment due procees of law, (e) the strict scrutiny test of the Fourteenth Amendment equal protection clause because of the existence of state court rule, Okla.Sup.Ct.R. 1.11(e)(1) to process and hear Oklahoma appeals there is no compelling state interest for appellate proceedings to be conducted in accordance to court rule Okla.Sup.Ct.R. 1.36(g) summary appeals enough to warrant the unique classification, (f) the intermediate scrutiny test of the Fourteenth Amendment equal protection clause because the State of Oklahoma has no genuine, not hypothesized or invented *post hoc* in response to litigations" and no justification that may be offered by the Defendants that is "exceedingly persuasive," United States v. Virginia, 518 U.S. 515, 533 (1996). And, there appears no rational justification for Okla.Sup.Ct.R. 1.36(g) summary appeals proceedings particularly when they are skewed to reach a predetermined outcome for the appellees in state court.

(b) Enter a declaratory judgment that all appellate proceedings conducted under

Okla.Sup.Ct.R. 1.36(g) summary appeals, including the <u>Hatton</u> appeal are from January 1, 1997, null, void, and of no force or effect whatever from the inception because each is and was unconstitutional conduct of the Defendants under (a) equal access to justice, (b) the strict scrutiny test a denial of the Hatton's rights under First Amendment free speech, right to petition, Fourteenth Amendment equal protection clause, (c) the intermediate scrutiny test  a denial of the Hatton's rights under the Fourteenth Amendment equal protection clause, and/or (d) deny appellants, including Plaintiff, their Fourteenth Amendment due process of law. <u>Mathews v. Eldridge</u>, 424 U.S. at, 333–35.

3.   Issue its declaratory judgment that Oklahoma Supreme Court Rule 1.36(g), 12 O.S., ch. 15, app., in its deprivation and prohibiting appellants from filing of appellate merits brief is unconstitutional both on its face and as applied to Plaintiff and grant corresponding prospective injunctive relief permanently enjoining the State from depriving and prohibiting the filing of appellate merits briefs or briefs-in-chief in its appeals substantially, similar to those required to be filed under 1.11(a), 12 O.S., ch. 15, app., as it may hereafter from time to time may be amended.  And further declare that contrary to the common law 12 O.S. § 2 proceedings under court self-legislated rule Okla.Sup.Ct.R. 1.36(g) are strictly construed as being in derogation of common law.[72]

4.   The Rule 1.36 is to be addressed, considered and is to be declared to be unconstitutional under the provisions of U.S. CONST., Art. IV, Privileges and Immunities, Sec. 1, and Full Faith and Credit, Sec. 2; Art. VI, Sec. 2, Supremacy Clause; amend. I, Free Speech, and Right to Petition, and amend XIV, § 1 both its equal protection clause and due

---

[72] Fordham and Leach, Interpretation of Statutes in Derogation of the Common Law, 3 VAND. L. REv. 438, 440 (1950); Pound, The Common Law and Legislation, 21 HARV.L.REV. 383, 387 (1908).

process clauses as though Rule 1.36 had never existed or had never been judially enacted by the Oklahoma Supreme Court. All proceedings that have been or are being conducted under Rule 1.36 are to be found and declared from the beginning, January 1, 1997, to be null, void, and from the outset to be without force and effect and all Rule 1.36 proceedings are to be declared and ordered to be continuing and ongoing, any Rule 1.36 decisions entered by the Defendants are to be ordered to be vacated by the Defendants in each and every Rule 1.36 appeal with notice thereof being mailed to the parties in each, respective appeal. Notwithstanding, a 20 O.S. § 16 mandate may have been issued in each Rule 1.36 appeal, the trial court may have been notified, and filed said mandate in that trial court. Nonetheless, each and every mandate shall be ordered recalled in all and any of the Rule 1.36 appeals and all appeals are to be heard or considered by the Defendants and appropriately decided on the issues proffered by the parties' disposition motions or their appellate merits briefs.

5. Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988.

6. Grant such other and further relief, in law and equity, as the Court deems just and proper.


Respectfully submitted,


Paul Anthony Hatton, Plaintiff pro se
101 Jordan Way
Pauls Valley, Oklahoma 73075
Telephone: (405) 926-7295

**VERIFICATION**

STATE OF OKLAHOMA     )
                      ) ss.
GARVIN COUNTY         )

I, Paul Anthony Hatton, being first duly sworn, affirm and say that I am the plaintiff in the above-styled action; and that I have read the above and foregoing document and I know the contents thereof.  The facts therein stated are fully stated, true and correct of my own personal knowledge.

DATED: December 14, 2018.

_____

Paul Anthony Hatton, Plaintiff.

Taken, sworn to and subscribed before me this 14th day of Decmber, 2018.

_____
Notary Public in and for the State of Oklahoma

-73-